CHARLES FERDINAND OEHMICH, Appellant, vs. ARTHUR
E. HEDSTROM et al. Appellees.

*Opinion filed October 25, 1911.*

1. LACHES—*cestui que trust must act promptly if he desires to
have trustee's sale set aside.* After a *cestui que trust* attains his
majority and reads the will creating the trust and voluntarily be-
comes a party complainant to a suit which has been pending many
years to recover the proceeds of a trustee's sale held when he was
a minor, it is his duty to act promptly if he desires to set aside
such sale, and he will not be permitted to delay such action for
many years, during which time he recovers and receives a portion
of the proceeds of such sale.

2. SAME—*what does not excuse failure of cestui que trust to
attack trustee's sale.* The fact that the *cestui que trust* is not en-
titled to possession of the entire principal of the trust estate until
he is thirty-five years old does not require nor entitle him to wait
until that time before attacking a trustee's sale made while he was
a minor, where he has a vested interest in the remainder from the
date of the testator's death, without any intervening estate, and is
entitled to a portion of the principal of the estate when he reaches
the age of twenty-four years, as he may at that time file a bill in
equity and question the validity of the sale.

APPEAL from the Circuit Court of Cook county; the
Hon. ADELOR J. PETIT, Judge, presiding.

LACKNER, BUTZ & MILLER, (ALBERT M. KALES, and
FREDERIC E. VONAMMON, of counsel,) for appellant.

WILSON, MOORE & MCILVAINE, and ULLMANN & ULL-
MANN, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Charles Ferdinand Oehmich filed his bill in the circuit
court of Cook county for partition, claiming an undivided
one-third interest in certain lands in South Chicago, which
are described and identified as parcels A, B and C and the
residue of lot 58 on a certain plat filed as an exhibit with
the bill. The answer of the defendants denied that the

complainant had any title to the premises involved, and upon a hearing the bill was dismissed for want of equity. Complainant below has perfected an appeal to this court.

The lands involved belonged to Charles F. Oehmich, grandfather of appellant, who died in 1875, leaving a last will, under which appellant claims title in fee to one-third of the real estate in question. Both parties agree upon the general proposition that a one-third interest in the premises was devised to appellant by the will of Charles F. Oehmich. Conceding the title to have been in appellant, appellees contend that the title passed out of him by a conveyance made in accordance with the provisions of the will, and it is further contended that if the power under the will was so imperfectly exercised that the legal title did not pass by the conveyance made in pursuance thereof, appellant has lost all right of action to recover said premises for the following reasons: (1) That the Statute of Limitations is a bar to appellant's action; (2) that appellant is barred by *laches;* (3) that a decree in a former suit adjudicated that the power of sale under the will was properly and legally exercised by the conveyance made, and that appellant is thereby estopped to deny that the power was well exercised; (4) that appellant has, by receiving a portion of the proceeds of the sale under the power after he became of age, elected to ratify the conveyance and confirm the sale made under the will and has thereby estopped himself from attacking the power or questioning the sale made under it. All of these several defenses have been ably argued in the exhaustive briefs filed by the counsel for the respective parties, but in the view that we have of the case it will not be necessary to consider all of these matters of defense. The facts relating to one branch of the case which in our opinion presents an insuperable barrier to appellant's right of recovery, are, in substance, as follows:

Appellant was born January 29, 1874. He was therefore about one year old when his grandfather, under whose

will he claims the property in question, died. The will de-
vised both real estate and personal property to appellant.
The principal part of the personal property devised con-
sisted of notes secured by trust deeds and mortgages. By
his will the testator appointed trustees to manage, control
and invest appellant's estate, and under certain conditions
the trustees were given the power to sell the real estate
belonging to appellant. The will provided that appellant
should be supported and educated out of the interest ac-
cruing on his share of the estate. The will further pro-
vided that when appellant reached the age of twenty-one
all of the accumulated interest not previously paid out for
his maintenance and education should be paid to him by
the trustees; that when he arrived at the age of twenty-
four he should receive one-fourth, at the age of thirty an-
other fourth, and when he attained the age of thirty-five
the balance of principal and accumulated interest should be
paid and delivered to him. In 1882, when appellant was
eight years old, the trustees, claiming to act under the pow-
ers given by the will, sold and conveyed the premises in
question, with other lands, to Charles O. TenBroeke for the
consideration of $13,927.66. This sale was approved and
confirmed by the county court of Cook county, and appel-
lees claim title by a regular chain of conveyances from
TenBroeke. Two years after the sale to TenBroeke a bill
was filed on behalf of the appellant by his mother as next
friend, against the trustees, for an accounting as to the
proceeds of the trustees' sale, and two years later a decree
was entered in that proceeding finding that the trustees had
received on account of appellant the sum of $34,561.49 and
had paid out on his account $6970.57, and that there was
an unpaid balance due his mother for appellant's support
of $2870, and ordering that Catherine Oehmich, mother of
appellant, be paid the sum of $65 per month thereafter,
and until the further order of the court, for appellant's
support. The decree found that the trustee Gollhardt had

faithfully administered the trusts reposed in him under the said will and had in all things complied with the provisions of the will, and all of the trustees' acts and doings under the will were approved and confirmed. The court retained jurisdiction of this proceeding and entered several orders in the course of the administration of the trust. When appellant attained his majority this bill for an accounting was still pending in the circuit court, and appellant on his own motion was made a party complainant in his own proper person. Throughout this entire proceeding no question was raised by appellant as to the validity of the trustees' sale. On the contrary, the bill alleged, and the decree found, that the sale was regularly and legally made and that appellant was entitled to the aid of a court of equity to compel the proper disposition of the proceeds arising from said sale. The evidence shows that the appellant diligently and persistently sought to collect from the different trustees into whose hands the funds successively passed, the proceeds of this sale, until finally, through the insolvency of one Schmid, who had succeeded to the trust, a substantial portion of appellant's estate was lost. The evidence shows that the appellant received, after he became of age, about $3000 in interest, a substantial part of which accrued on the proceeds of the sale of the real estate here involved. It also appears that appellant received a $560 dividend on his claim against the estate of one Schintz. Twenty-seven years after the sale in question had been made, during which time appellant had exhausted all efforts to collect the proceeds thereof, and in so far as such efforts were successful he had collected, accepted and used the proceeds of said sale, and after appellant had attained the age of thirty-five years, the present bill was filed to set aside the trustees' sale on the ground that said sale was void and that the title to the real estate had during all these years remained in appellant. The evidence further shows that appellant attended the public schools until he passed through the seventh

grade; that he then went to work, and that he resided with his mother in South Chicago, near where the lands in question are located, until after he was twenty-one years of age. He testifies that when he was fifteen years of age he learned that he was an heir to the estate of his grandfather and that he heard that some of the property he was interested in had been sold. He knew that his mother was supporting him out of money that she was receiving from his grandfather's estate. When he was twenty-one years old he saw a copy of the will and read it. He must have known of the litigation against the trustees before he became twenty-one years of age. If he did not, he certainly had received full information in regard thereto when, after he attained his majority, he became the complainant in that proceeding.

Under the facts presented by this record, which are briefly outlined above, and according to the plainest and best established principles of equity, appellant is clearly barred by acquiescence and delay from asserting any claim to the real estate involved, regardless of all question concerning the validity of the sale. In *Smith* v. *Clay*, 3 Brown's Ch. 640, the court announced the equitable principle which must control here, in the following language: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands where the party has slept upon his rights or acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing. *Laches* and neglect are always discountenanced, and therefore from the beginning of this jurisdiction there was always a limitation of suit in this court." The principle announced above has often been recognized and applied by this court. *Penn* v. *Heisey*, 19 Ill. 295; *Owen* v. *Peacock*, 38 id. 33; *Beach* v. *Shaw*, 57 id.

17; *Carpenter* v. *Carpenter,* 70 id. 457; *Hamilton* v. *Hamilton,* 231 id. 128.

Appellant's answer to the defense of *laches* is: (1) Appellant had no knowledge of the sale in question, or his rights thereunder, until 1906; and (2) because under the sale appellant was not entitled to the possession of any part of the premises until 1898, when he became twenty-four years of age, at which time he was entitled to one-fourth, to another fourth in 1904, and the remaining half was not to be delivered to him until 1909, when he attained the age of thirty-five.

As to the want of knowledge on appellant's part, the evidence shows the situation from which actual knowledge on appellant's part must necessarily be inferred. All of the sources of knowledge through which persons ordinarily obtain information respecting matters affecting their interests were open to appellant. It is inconceivable that a boy of ordinary intelligence would grow up to manhood under the immediate care of his mother and not learn from her that he was being maintained and educated out of funds derived from the sale of property left to him by the will of his grandfather. The probability that the appellant had such actual knowledge is greatly strengthened by the circumstance that litigation was pending between appellant and the trustees for more than ten years before he attained his majority, concerning the proceeds of this sale and other funds that came to appellant from the same source. Aside from the circumstances from which actual knowledge, as we have seen, must be imputed to appellant, all of the court proceedings in the case for an accounting were matters of record which were open to appellant, and we see no reason why the doctrine of constructive notice should not be applicable to appellant. But even if it be granted that appellant was ignorant of this sale until he became twenty-one years of age, at that time he admits that he read his grandfather's will and then voluntarily became the com-

plainant in the chancery suit, in which the entire history of the trustees' dealings with this estate was set out in detail. Having learned the facts at that time, if he did not know them before, equity enjoined upon appellant the duty to act within a reasonable time, and he cannot be excused for unreasonable delay on the ground that he did not know the legal consequences resulting from these facts. *Williams* v. *Rhodes,* 81 Ill. 571.

Appellant's second position upon this branch of the case is equally untenable. It is perfectly plain that appellant had a vested interest in remainder in the premises involved, from the date of the death of the testator. There was no intermediate life estate or other interest to precede that of appellant. There was merely a postponement of the period of distribution and a devise over in case appellant died before he attained the age of thirty-five leaving no child or children. While appellant could not have maintained ejectment for the possession of his one-third interest until he attained the age of thirty-five, he might have filed a bill, as he has done in this case, when he became entitled to his one-fourth interest,—that is, when he became twenty-four years of age,—and in that proceeding the validity of the sale could have been adjudicated. But we are clearly of the opinion that appellant's equitable interest under the will was such that he could have maintained a bill against the trustees and the purchasers at the sale on the ground that the trust fund was being illegally diverted from the purposes contemplated by the will. This, of course, is upon the assumption that the sale was illegal and wholly without authority of law, as appellant now contends it was. That appellant was not required to wait until he became entitled to the complete enjoyment of the estate is well supported by authority. *Waterman Hall* v. *Waterman,* 220 Ill. 569; *Robison* v. *Pierce,* (Ala.) 24 So. Rep. 984; *Wright* v. *Miller,* 8 N. Y. 9.

Under the evidence in this record we are constrained to hold that the appellant is clearly barred from any relief in equity by his long, unexplained delay. In resting our judgment upon this single ground we do not mean to have it inferred that there is no other good defense to this action. Since the decree dismissing this bill may safely rest upon this defense we have not deemed it necessary to discuss other questions.

Finding no error in the decree below it will be affirmed.

*Decree affirmed.*