(No. 18979.—

NICK KORSON, Appellant, *vs.* NICK STATHOPULOS *et al.*
Appellees.

*Opinion filed February 20, 1929—Rehearing denied April 5, 1929.*

GEORGE W. LUDDEN, for appellant.

McINERNEY & POWER, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks reversal of a decree of the circuit court of Cook county dismissing a bill by which he prayed a decree of that court that a resulting trust in certain real estate in the city of Chicago exists in his favor. A demurrer to the original bill was sustained and appellant was given leave to file an amended bill. This bill alleges that he and appellee Nick Stathopulos are cousins; that on August 13, 1913, he deposited $1000 with Stathopulos to invest for him; that Stathopulos invested the money in property at the corner of Devon avenue and Clark street; that about a month thereafter the property was disposed of at a profit of $1000, and Stathopulos returned appellant's $1000 and an additional $500 as his share of the profit; that on or about the first of October, 1913, Stathopulos told appellant that he had an opportunity to obtain another piece of prop-

erty that would be a profitable investment; that it would require that appellant put up $2500; that appellant thereupon gave him $2500 in cash and $45 additional to pay the costs and charges with reference to the transfer papers. The amended bill then charges that Stathopulos invested that sum of money for appellant and purchased by warranty deed a certain piece of property known in the record as the Grand avenue property, located at Grand avenue and Sixty-fourth street, in the city of Chicago; that shortly thereafter, on October 11, Stathopulos conspired with appellee Andrews to defraud appellant, and induced the grantor of the property to execute a deed therefor in the name of Stathopulos; that Stathopulos at the time of purchasing the property was a man of no financial responsibility, possessing but a small restaurant, from which he derived only a small income, and that the only money used in the purchase of the real estate was the money furnished by appellant; that on October 14, 1913, Stathopulos again conspired with Andrews and fraudulently and without the knowledge of appellant sold or pretended to sell a one-half interest in the premises to Andrews; that later, on July 15, 1915, they, without the consent of appellant, conspired together and secured from the Foreman Bros. Banking Company a loan of $7000, secured by a trust deed on the premises, which sum was fraudulently kept by Stathopulos or divided between him and Andrews. The bill also charges that on August 6, 1914, Stathopulos purchased from Sarah E. Lovett certain other real estate with the rents and income derived from the Grand avenue property, by reason whereof appellant should be decreed to be the owner of one-half of the Lovett property, but that Stathopulos, notwithstanding this fact, on October 31, 1916, conveyed one-half of this property to Andrews and that no consideration was paid by Andrews. The amended bill prayed that a resulting trust be decreed, that an accounting be had of the rents and income from the properties, and that appellant

be decreed to own a one-half interest in both of said pieces of real estate.

Stathopulos and Andrews answered the bill, denying all the allegations set out in the complaint and averred that appellant had no interest in any of the real estate described in the bill but that the property was purchased by them with their own money and that he did not at any time advance any money for obtaining such real estate; that they have been in possession of the Grand avenue property since the date of purchase, a period of over eleven years, and during all that period managed and controlled the same, made improvements on it, paid taxes and assessments and expended more than $10,000 in improving it, no part or portion of which was advanced by appellant. They further allege in their answer that appellant, in filing his bill eleven years after the purchase of the real estate, is guilty of *laches*. The Foreman Bros. Banking Company also answered the bill.

The cause was referred to a master in chancery, who heard the evidence and certified the same to the circuit court. The master, immediately after making such certificate, became a judge of the circuit court, and by stipulation the evidence was read before the chancellor, another judge of the circuit court, and the cause proceeded before him. On such hearing the chancellor dismissed appellant's bill for want of equity.

At the outset of the case it is necessary to consider a motion filed by appellees Stathopulos and Andrews to strike appellant's second amended bill from the record and abstract for the reason that it was filed without an order of the chancellor granting leave so to do. That motion was taken with the case. The record shows that on September 27, 1926, appellant filed a motion for leave to file an amended bill of complaint without prejudice to the hearing before the master, the hearing of evidence theretofore having been had before the master. On October 4, 1926, an order was

entered by the chancellor continuing the motion until the filing of the report of the master. On October 13, 1926, appellant served notice of a motion that the cause be set down for hearing on evidence taken before the master and that appellant would call up the motion for leave to file his second amended bill. The record discloses that no order was entered permitting the filing of the second amended bill. This being so, it was filed without leave granted. The motion to strike the second amended bill will be allowed.

Appellant seeks reversal on the grounds (1) that a confidential and fiduciary relationship existed between him and Stathopulos; (2) that the evidence establishes the existence of a resulting trust in a one-third interest in the Grand avenue property in his favor; (3) that the evidence clearly indicates that a fraud was practiced upon him by Stathopulos and that Andrews actually and knowingly aided and participated therein; (4) that the property purchased from Sarah E. Lovett was purchased by them in part with the funds belonging to appellant; and (5) that the rule of *laches* does not apply in this case.

Appellant testified, in accordance with the charges in his bill, that he did not know how to read or write English; that he did no banking business but was in the habit of keeping his money in his own deposit box; that Stathopulos is his cousin and was frequently in and about his store and kept some of his papers in appellant's safety box; that appellant gave him $1000 for the purchase of the first property, known as the Devon avenue property, which was later sold, making them each a profit of $500; that a few days later, about September 28 or 29, Stathopulos asked him to give him $2500, saying that he was going to buy some property for them where they could both make money; that a day or two later Stathopulos told him that the deal had been closed; that the tenant paid $125 per month rent; that he (Stathopulos) and Andrews would collect the rent, pay the expenses and settle everything when the property was sold;

that he later went with Stathopulos to see the property; that thereafter he and Stathopulos also bought a 99-year lease on property on Blackstone avenue; that in 1920, when Stathopulos desired to return to Greece for a visit, appellant paid him $500 for his interest in the Blackstone avenue property; that Stathopulos was in Greece for two years, and in March, 1922, after his return, he advised appellant they would try to sell the Grand avenue property and he had been offered $38,000 for it; that about April 1, 1923, appellant demanded an accounting of the rents and for some evidence of his interest in the property, and was thereupon informed by Stathopulos that he had no interest in the property, whereupon he struck Stathopulos.

Appellant is a florist in the city of Chicago. His testimony as to giving money to Stathopulos is corroborated by Lillian Christiansen and Frank Johnson, his employees, who testified that they saw him give some money to Stathopulos, and on one occasion it was a large package of money, and appellant said, "There is $2500 in the package." These witnesses testified that conversations had between appellant and Stathopulos were conducted in Greek, which the witnesses did not understand, but that appellant had told them, in the presence of Stathopulos, that the money was to be used to buy property.

Peter Manos, who was an employee of appellant, testified that in March, 1923, appellant and Stathopulos were talking in the former's store when appellant said he wanted a piece of paper on the Grand avenue property, and Stathopulos told him that appellant had nothing to do with the Grand avenue property, and appellant said, "Don't I give you $2500 and we buy the Grand avenue property?" and that Stathopulos replied, "Yes, you give me the money but I bring it back to you; don't you remember?" This is denied by Stathopulos.

Andrews testified that he first signed the original contract for the purchase of the Grand avenue property at a

purchase price of $12,000 and put up a check for $200; that the then owner of the property would not agree to sell for that amount but later sold to witness' grantor for the sum of $14,000; that on September 8 witness again contracted for the property at $16,000 and put up his check for $1000; that on October 11 a deed was made to Stathopulos, and he and witness each paid $3750 of the purchase price and assumed a mortgage of $8500; that thereafter they paid off $1500 of that mortgage and paid the balance by a new mortgage to the Foreman Bank, which was renewed just previous to the hearing. He is corroborated by the books of the bank with which Stathopulos was then doing business, as to the withdrawal at that time from Stathopulos' account. Andrews also testified that Stathopulos conveyed a one-half interest in the property to him, and that they have expended over $10,000 in improvements; that they made a restaurant and dance hall out of the building and conducted a restaurant, soft drink parlor and dance hall. He denied that he had at any time told appellant that he (appellant) was interested in the property, or that appellant ever told him that he had any claim in the property. Appellant admits that he did not tell Andrews that he had any interest in the property. Andrews also testified that after the suit was filed he went to appellant and asked why he (witness) had been brought into the matter, and appellant replied that witness was all right but he wanted to get the other fellow.

We will consider first the question of *laches*. Appellant after a period of eleven years is seeking to establish a resulting trust. He claims by his bill to be the owner of a one-half interest in the property and that it was purchased for him and Stathopulos by the latter. In his brief he claims he is entitled to a one-third interest. He also sets out in the bill that Stathopulos deeded one-half of it to Andrews. He does not say when he learned of this fact, but if his testimony is true he must have known of it shortly

after the deed was passed, yet he made no objection but alleges that he was content with Stathopulos' statement that he and Andrews would collect the rent and would render an accounting. If, as he claims, one-half of the property was to be held by Stathopulos for him, he must be held to have known, when Stathopulos conveyed one-half to Andrews, that Stathopulos, although he was managing the property, had no interest therein, having deeded his interest to Andrews, yet he for eleven years made no complaint. Andrews and Stathopulos improved this property in the eleven years by expenditures of over $10,000, no part of which was contributed by appellant. For eleven years appellant made no effort to assert his rights, secure an accounting or commence an action of any kind. His counsel argues that this was because he had blind confidence in Stathopulos, but the record shows as to the Blackstone avenue lease that when Stathopulos went to Greece, to be gone for a considerable time, appellant purchased his interest in that lease, but nothing was said as to the management or his interest in the Grand avenue property. It also appears that Stathopulos told him that he (appellant) had no interest in the property in March, 1923, yet he made no demand for an accounting for a year thereafter and did not file his bill for fourteen months.

Where a party has knowledge of facts entitling him to equitable relief and does nothing to assert his rights for eleven years, giving no valid excuse for his delay, his *laches* will bar a right to relief. (*Breit* v. *Yeaton,* 101 Ill. 242.) A court of equity will refuse to aid stale demands where a party has slept on his rights. If one calls upon a court of equity he must show reasonable diligence. Where this is absent such a court will not grant relief. (*Oehmich* v. *Hedstrom,* 251 Ill. 481; *Hamilton* v. *Hamilton,* 231 id. 128; *Brown* v. *Brown,* 154 id. 35; *McDonald* v. *Stow,* 109 id. 40.) Particularly is this true where claims rest in parol, and the lapse of time and frailty of human

memory may cause the truth concerning the transaction to be lost. In this case for eleven years appellant permitted Stathopulos and Andrews to hold this property without question, collect rents, pay interest on mortgages and the principal thereof, make improvements and pay taxes and assessments, of which he paid nothing and as to which he made no inquiry.

We are of the opinion that even though it were to be said that appellant's evidence tends to establish the existence of a resulting trust (which we do not find) he is barred by *laches*. Equity will assist only those who are diligent in asserting their rights and claims. No reason is set forth in the bill or evidence that would satisfactorily explain such lack of diligence on the part of appellant. The chancellor therefore did not err in dismissing the bill for want of equity.

The decree will be affirmed.

*Decree affirmed.*