In re Estate of Eugenia Crimp Bridge, Deceased.
In re Claim of Walter Crimp et al., Appellants, v. First
Union Trust and Savings Bank, Appellee.

Gen. No. 35,153.

Opinion filed November 24, 1931. Rehearing denied December 7, 1931.

IVOR JEFFREYS, for appellants.

WINSTON, STRAWN & SHAW, for appellee; JAMES H. CARTWRIGHT and THOMAS A. REYNOLDS, of counsel.

MR. JUSTICE KERNER delivered the opinion of the court.

On December 3, 1929, appellants Walter E. Crimp, Alfred A. Crimp and Bessie Crimp Harvey filed a claim in the probate court of Cook county against the estate of Eugenia Crimp Bridge, deceased, for money collected by the deceased as trustee for appellants under an agreement dated December 29, 1893, made by the testatrix in her own right and as executrix of the estate of William G. Crimp, father of appellants, and Ezekiel Smith and Joseph Eastman, and alleged that all knowledge of the trust agreement and of the moneys paid thereunder were fraudulently withheld and concealed from them and each of them by the testatrix, and no knowledge of the contract or of the moneys paid

thereunder ever came to their knowledge, or any of them, until after the death of the testatrix. The testatrix died January 20, 1929. The claim was allowed in the probate court for $57,473.53; an appeal was taken to the circuit court of Cook county, where the cause was tried *de novo* without a jury, resulting in a finding in favor of appellants and assessing the damages at $31,516.74. Judgment was entered on the finding, from which judgment an appeal was taken by appellants to this court, appellants contending that the circuit court erred in not allowing the claim for the full amount claimed by them. Appellee has assigned cross errors.

The material facts are that on November 14, 1893, William G. Crimp died testate in Chicago, leaving a will dated November 10, 1893. He left him surviving Eugenia Crimp, his widow (who afterwards married John M. Bridge), the appellants aged 16, 12 and 10 years, respectively, his children by a former marriage, and three children by his marriage with Eugenia Crimp, one aged three months and the other two respectively two and three years old. By his will he left all of his estate to his widow. His estate consisted of claims against Patrick J. Sexton and Ezekiel Smith, $5,000 insurance, his home on Champlain avenue and 12 vacant lots, upon which testatrix afterwards built flat buildings. For many years prior to his death he was a member of the firm of Smith, Crimp & Eastman, contracting plasterers, who operated extensively not only in Chicago but throughout the United States. In the spring of 1894, this firm dissolved. Smith retired to a farm in Missouri. Eastman went to California and died there and Crimp became associated with the McCormick Construction Company, who had a contract for the excavation of section 14 of the Chicago Sanitary District Canal. Shortly thereafter Crimp became ill and the McCormick Construction Company's affairs being involved Crimp sent for Ezekiel

Smith and requested him to look after his interests in the McCormick Construction Company. Upon his arrival Eugenia Crimp informed him that her husband had made a will in which he left everything to her so that the McCormick Construction Company matter could be handled and she was to provide for the appellants. She also informed him that she would provide for the appellants and that her husband depended upon her honesty to see that the appellants got what was right. Smith investigated the affairs of Crimp and as a result, after the death of Crimp, caused a bill to be filed in the United States District Court entitled *Eugenia Crimp v. McCormick Construction Company and R. P. McCormick,* in which proceeding a receiver was appointed for the McCormick Construction Company. January 5, 1894, the assets of the McCormick Construction Company were offered for sale at public auction, and were purchased by Smith and Eastman, the two former partners of Crimp; $8,000 was paid for the physical plant and $33,000 for the contract with the sanitary district, making a total of $41,000. December 29, 1893, prior to this sale, Smith and Eastman entered into a contract (which is the basis for the claim in the instant case) with Eugenia Crimp in her own right and as executrix of the estate of William G. Crimp, deceased, under which Eugenia Crimp sold and assigned all her right, title and interest and all of her stock, securities and rights, claims and demands against R. P. McCormick and the McCormick Construction Company to Smith and Eastman. In this contract Smith and Eastman agreed to bid at the sale of the assets of McCormick Construction Company, and if successful, to carry out the contract with the sanitary district and to pay Eugenia Crimp as trustee $10,000, to be evidenced by a promissory note drawing interest at six per cent per annum from the beginning of the work and two-ninths of the net profits, the two-

ninths not to exceed $28,000 and not to be less than
$10,000. The note payable to Eugenia Crimp, as trus-
tee, was given and the semiannual interest was col-
lected in January and July of each year up until
January, 1901, when the final instalment of interest
and principal was paid. Eugenia Crimp agreed to
receive the interest from the note of $10,000 and apply
it to the maintenance, education and necessary expense
of the appellants, and when the principal was paid to
safely keep and invest it in safe interest-bearing se-
curities. A like provision applied to the two-ninths'
profit when received. All moneys received under the
contract were to be held by her in trust for the appel-
lants and paid to them when they became of legal age
and released all claims against their father's estate.
The provision in the contract in this respect being as
follows:

"It is understood and agreed by the parties hereto
that the provision herein made is to be the whole share
of said three oldest children and they are never to
make any other claim on second party for anything
more on account of their father's estate." January 15,
1894, Eastman assigned to Patrick J. Sexton all of
his right and interest in this agreement and all his in-
terest in the assets purchased at the receiver's sale,
and January 17, 1894, Sexton and Smith entered into
a copartnership agreement for the purpose of carrying
out the contract with the sanitary district. In this co-
partnership agreement it was agreed that the interest
purchased of Eugenia Crimp was to be managed by
Sexton and as much realized as possible, the proceeds
turned into the general fund and the interest or ad-
vances of $10,000 secured to Eugenia Crimp, as trustee,
to be paid as other expenses; that when all the moneys
were collected by Sexton and all debts paid the re-
maining money was to be divided 22 2/9 to the appel-
lants and 38 8/9 to Smith and Sexton, respectively;

when appellants had been paid a total of $28,000, including the $10,000 guaranteed, their interest should cease, and if 22 2/9 profit did not amount to the $10,000 guaranteed then Sexton and Smith should contribute equally a sufficient sum to make the Crimp share $10,000. January 29, 1901, Smith and Sexton entered into an agreement in which they recited that the work of excavating section 14 of the sanitary district had been completed and that they were settling their accounts, and Sexton undertook to save Smith harmless from all loss, damage or expense in any way arising out of the agreement of December 29, 1893. On July 6, 1904, Eugenia Crimp Bridge filed a claim in the probate court of Cook county against Sexton's estate, in which she set forth the trust relation and claimed the money as her individual property, seeking to collect the two-ninths of the profits arising under the contract of December 29, 1893. In her claim she admitted receiving the $10,000 and claimed the difference between $10,000 and $28,000, $18,000. December 30, 1904, her claim was allowed for $12,500 and paid that day.

Eugenia Crimp died testate leaving an estate in excess of $161,000. Her will contained the following provision:

"Third: I give and bequeath to my step-children, Walter Crimp, Alfred Crimp and Bessie Crimp Harvey, each, the sum of $2,000 provided *that they shall make no further or other claims against my estate.* In making this provision for my said step-children I have taken into consideration the fact that I have heretofore expended considerable sums of money for their education, clothing, care and living expenses and have provided a home for them." (Italics ours.) The remainder of her estate after bequeathing $500 to each of her grandchildren was to be left in trust for her own children. After her death no books of account kept by her were found; neither was the original con-

tract nor any copy of the contract of December 29, 1893, discovered among her papers. The appellants had no knowledge of the trust agreement of December 29, 1893, or of the moneys paid thereunder and that as the beneficiaries thereunder they had any claim against Eugenia Crimp Bridge as trustee, until after her death. We shall first dispose of the cross errors assigned by the appellee. Its main contention is that the rights of the appellants are barred by laches. It appears from the record that Walter, the oldest son of William G. Crimp, was 17 years of age when his father died; that the following summer he entered the employ of Zander & Reum Company as a plasterer's apprentice and has remained with that firm for more than 36 years and is now in its employ as superintendent; that he was present during the latter part of January or the first part of February, 1929, when Henry H. Benjamin read testatrix' will in which the appellants were bequeathed $2,000 each, provided *they should make no further or other claim against her estate;* that thereafter he made a search to discover what possible claims they might have against her estate; that old neighbors and friends were interviewed; searches were made in the recorder's office at Joliet, the county in which section 14 of the Sanitary District Canal was located; in the recorder's office of Cook county and in the clerk's office of the county, federal and circuit courts at Chicago, and as a result he discovered in the files of the Continental Illinois Bank & Trust Company the agreement of December 29, 1893.

Eugenia Crimp Bridge kept no books of account. After her death no books of account of Eugenia Crimp Bridge were found, nor was the original trust agreement or a copy of the agreement of December 29, 1893, discovered. Ezekiel Smith, the only surviving contracting party to this agreement, testified that he never told appellants anything about the trust agreement.

Samuel T. Jacobs, who was employed by Patrick J. Sexton from 1893 until his death in 1903, and who knew Smith, Crimp, Eastman and Eugenia Crimp, and saw the agreement a day or two after its execution, testified that the agreement had been in his custody from that time until the death of Mr. Sexton. That he saw Sexton pay Eugenia Crimp money every six months; that the first time was six months after the $10,000 note was given, and that Eugenia Crimp received the $10,000 in January of 1901, and the note was canceled. Cora C. Doolittle testified she was an intimate friend of Bessie, one of the appellants, that she was frequently at her home and had never at any time heard of the agreement. George Chandler lived two doors south of and visited Eugenia Crimp frequently; they were neighbors for 27 years; that he knew her since 1894 and talked with her about business matters in a minor way; that she never discussed the trust agreement of December 29, 1893. Mary C. Spencer, the oldest daughter of Eugenia Crimp, testified that she heard of the existence of the agreement but never talked to the appellants about it. O. S. Gaither, who drew William G. Crimp's will, testified that he was a close personal friend of Eugenia Crimp and upon the death of Crimp he became her business adviser and continued in that capacity until about six or seven years before her death; that she never told him that the $10,000 was held by her in her trust capacity for the appellants and that he knew nothing of the trust agreement; that he knew Eugenia Crimp was engaged in a great deal of litigation and that he had suggested a law firm to her which firm filed her claim against the estate of Patrick J. Sexton for $18,000. It further appears from the record that Walter arrived at legal age on December 14, 1897, Alfred on January 1, 1902, and Bessie on February 20, 1901, and that on November 5, 1901, testatrix filed a bill in the circuit court of Cook county

against Smith, Sexton and Eastman for an accounting under the trust agreement of December 29, 1893, in which she alleged that since the said contract was made, two of the minor children of her deceased husband, mentioned therein, have become of age and have released to her all their rights of every description, arising out of the contract hereinbefore referred to, and that the other child therein referred to (meaning Alfred A. Crimp) will become of age on the 5th day of January next, and will then release to your oratrix all interest in said contract of whatever description, and that an amended and supplemental bill was filed after Alfred had become of legal age, alleging that he had also released to her his interest of the trust. On the books of the law firm who drew the bill was a charge against Eugenia Crimp Bridge, as trustee, for drafting a release to her from Walter E. Crimp. It further appears that at the opening of the testatrix' safety deposit box, Walter Crimp and Bessie Harvey admitted having a conversation with Henry H. Benjamin in which it was claimed by Benjamin that Walter asked him (Benjamin) to look for a release which they had signed when they became 21 years old. Walter denied the conversation and testified that his sister Bessie asked Benjamin to see if he could find a paper that she had signed when she was 18 years of age. It also appears that on April 2, 1929, Alfred A. Crimp wrote to Benjamin asking him if he had located a release which he signed in 1902. No releases executed by the appellants were, however, introduced in evidence.

It was upon this record that the court found the appellants had not been guilty of laches. In this view we concur. While it is true that laches and neglect are always discountenanced, it is also true that the doctrine of laches was created to promote the natural principle of justice and not to protect fraud and in-

iquity. The facts with reference to the trust agreement of December 29, 1893, did not come to the attention of the appellants until after the death of Eugenia Crimp Bridge. There can be no laches where there is no knowledge, and mere delay will not bar relief where the injured party was ignorant of the fraud and filed his claim within a reasonable time after acquiring knowledge of it. (*Duncan v. Dazey,* 318 Ill. 500, 525.) The duty to commence proceedings can arise only upon discovery of the fraud. (*Bishop v. Thompson,* 196 Ill. 206, 209.) Appellee's counsel contend the burden was on appellants to prove want of knowledge of the trust, and that they must fail in this action because they had not proven that fact by a preponderance of the evidence. In the instant case the appellants were attempting to prove a negative proposition, i. e., that they did not have knowledge. There is no evidence that any of the appellants had any knowledge concerning the trust agreement prior to November, 1929, and there is no evidence of the payment of any money to the appellants by the testatrix. In establishing a negative the law is satisfied with a less quantity of proof; evidence which renders the existence of the negative probable is sufficient, in the absence of proof to the contrary. (*Prentice v. Crane,* 234 Ill. 302, and cases cited there.) Appellants were not required to make plenary proof of a negative averment. (*In re Estate of Dedmore,* 257 Ill. App. 519, 522.) Under the circumstances in the instant case the findings of the trial court will not be set aside unless it appears that they are manifestly against the weight of the evidence, and this we are unable to say. On the contrary, the findings of the court that the appellants were not guilty of laches appear to be sustained by the weight of the evidence.

It is also contended by appellee that Walter E. Crimp was an incompetent witness. We do not think so. He testified that he was present at the reading of

the will after the death of the testatrix and what he did thereafter as before recited. No questions were put to him in any way respecting the agreement on direct examination. On cross-examination, however, he was asked when after the death of Mrs. Bridge did he first see a copy of the agreement of December 29, 1893, and he answered, "About the middle of November, 1929." The first exception of ch. 51, ¶ 2, Cahill's Rev. St. 1931, page 1428, permitted him to testify to facts occurring after the death of the testatrix. A similar situation arose in *Vigus v. O'Bannon*, 118 Ill. 334. There the decedent was given a policy of life insurance for collection. He collected the face value of it, but paid the beneficiary only $2,000, stating the insurance company refused to pay the face value of $5,000 and that he had compromised the claim for $2,000. O'Bannon died in 1883. After his death the claimant learned that O'Bannon had collected $5,000 and a claim was filed against his estate. The court on page 349 said:

"The testimony tends to show, that, in November, 1883, after the death of R. W. O'Bannon, appellant went to Chicago to testify, in some suit, to which A. W. Edwards was a party; that he was there told by Terpenny, that the receipt on the back of the policy was for $5000, and seemed to be greatly surprised at the information; that he had never before talked with Terpenny on the subject; that he never saw the policy, on which the receipt was indorsed, after he gave it to O'Bannon, in January, 1875, until it was exhibited to him in Chicago in November, 1883, etc. Such testimony had a tendency to show, that appellant had no notice of the cause of action, until after the death of O'Bannon. When appellant offered himself as a witness upon this subject, the circuit court refused to allow him to testify, holding his evidence to be incompetent, under section 2 of chapter 51 of the Revised

Statutes, entitled 'Evidence and Depositions.' Under the first exception to section 2, as set out in the statute, appellant should have been allowed to state such facts, having reference to the date of his receiving the notice in question, as occurred after the death of R. W. O'Bannon.''

It is next claimed the court erred in limiting the effect of the bill filed by the testatrix in the circuit court November 5, 1901, entitled *Eugenia Crimp v. Smith et al.,* to showing the reasonableness of certain charges for legal services, and in excluding the amended and supplemental bill; the answer of Joseph Eastman and the demurrers of Smith and Sexton. The purpose of this evidence was to get before the court the statement of the testatrix that the appellants had released to her all their rights of every description arising out of the trust agreement, and appellee argues that these files were matters of record which were open to appellants and that the doctrine of constructive notice was applicable and cite the case of *Oehmich v. Hedstrom,* 251 Ill. 481. We think the case is not applicable here, being clearly distinguishable on the facts, and what was said there is not in point under the facts in the instant case, but that the language of Mr. Justice Cartwright in *Howard v. Illinois Trust & Savings Bank,* 189 Ill. 568, 575, that ''The records of courts operate as constructive notice to parties under certain conditions, but they are not kept for the purpose of disseminating news'' is in point. In the instant case the appellants were not parties to the cause entitled *Eugenia Crimp v. Smith et al.,* and there is no evidence that they had any actual knowledge of the filing of the bill by the testatrix.

We now proceed to consider the errors assigned by the appellants. It is claimed the court erred in disallowing the interest collected by the testatrix on the $10,000 note. Samuel T. Jacobs testified the interest

was paid semiannually by check; that the testatrix called at Sexton's office every six months; that the first time was six months after the note was given; that the first payment of interest was in 1894. Ezekiel Smith testified that the interest at 6 per cent per annum was fully paid up to the final payment of the note in January, 1901. The testatrix in her claim filed in the Sexton estate admitted the receipt of the principal of $10,000. It is reasonable to assume that had the interest not been paid she would have alleged its nonpayment. There was no evidence on behalf of appellee that the interest had not been collected. This interest calculated from January, 1894, to January, 1901, aggregates $4,200 and should have been allowed appellants.

Appellants next contend the court erred in allowing appellee a credit of $300 claimed to have been paid to Flower, Smith & Musgrave, and $468.50 to Marshall & Rabadow, attorneys. In the trial court it was claimed by appellee that these sums were paid for legal services and costs in endeavoring to collect the $10,000 note. There was no evidence tending to show what services, if any, were rendered. The only evidence in the record in support of this claim is the ledger account of Flower, Smith & Musgrave with Eugenia Crimp, trustee, and a receipt of that firm, dated January 26, 1901, that they (Flower, Smith & Musgrave) received of the testatrix $300 in full of all charges of counsel and services in her matters, and $468.50 in full of bill of Marshall & Rabadow for costs and services in her suit against Smith and Eastman, which documents were received in evidence over the objections of appellants. There is no evidence that Marshall & Rabadow brought suit on the $10,000 note or that they rendered any services in connection with the note. Nor is there any evidence that the $300 for services rendered by Flower, Smith & Musgrave were in connection with

the note. It did appear from the evidence offered by appellee that the testatrix had a claim against Smith, Eastman & Sexton arising out of a matter wholly distinct from any matter involved in the instant case. These credits should not have been allowed.

It is also contended the court erred in allowing appellee a credit of $2,023.50 claimed to have been paid Flower, Smith & Musgrave, and $2,000 claimed to have been paid to J. B. Langworthy for legal services and court costs. These items must also be disallowed. The only evidence regarding the $2,023.50 appears from the ledger sheet of Flower, Smith & Musgrave. No evidence of the services performed, nor their reasonableness appears from this record, and it did not appear that the party making the entries in the ledger had any personal knowledge of their correctness. The $2,000 claimed to have been paid to J. B. Langworthy is based on two letters written by Musgrave, Vroman & Lee to Langworthy, dated November 30, 1904, and December 12, 1904. It appears that the letter of November 30, 1904, has to do with the contract relating to work done on the World's Columbian Exposition. The letter of December 12, 1904, did involve the matter in the instant case. However, it does not appear how much of the $2,000 is credited to the World's Columbian Exposition matter and how much to the collection of the claim filed by the testatrix against the Sexton estate for $18,000.

The trial court refused to allow interest on the $12,500 collected by the testatrix on December 30, 1904, from the Sexton estate. In our opinion the court erred in so refusing. Interest should have been allowed. (Chapter 74, ¶ 2, Cahill's Revised Stats. 1931, p. 1728; *Duncan v. Dazey,* 318 Ill. 500, 526; *Currier v. Kretzinger,* 162 Ill. 511, 516; *White v. Sherman,* 168 Ill. 589; *Ogden v. Larrabee,* 57 Ill. 389.)

We have considered the argument of appellee's counsel that the $4,200 collected as interest on the

$10,000 note up to January, 1901, has been applied to the maintenance, education and necessary expenses of the appellants. It may be so, but there is no evidence in the record that it was so expended. She kept no records of any kind tending to show that fact, if it is a fact, and it does not appear for what period after the death of William G. Crimp the appellants lived with the testatrix. Every presumption is indulged against the trustee who has personal dealings with a trust. (*White v. Sherman, supra.*) The rules of law applicable to trustees who misapply the trust estate without notice to the *cestui que trust,* often seem harsh and severe in their application to particular cases. They are intended, however, to impose a degree of punishment upon the trustee for the wrongful act. Such rules have their foundation upon the necessity that has been found by experience to exist to compel the performance of duties which the fiduciary relations impose. (*Ogden v. Larrabee, supra.*) It was her duty to account for every penny received and expended by her. From this record it clearly appears she did not do so. It must also be remembered that Walter E. Crimp commenced work as a plasterer in 1894 and that he has since continuously worked at that trade.

Our conclusions are that the circuit court erred in entering the judgment appealed from and that appellants are entitled to recover of appellee, as executor of the last will of Eugenia Crimp Bridge, the sum of $58,945.19, said sum being made up as follows:

Principal of note.........................$10,000.00
Interest thereon from Jan. 15, 1901 to Nov. 24, 1931 at 5 per cent per annum, 30 years, 10 months and 10 days.................. 15,430.13
Interest collected upon the $10,000 note from 1894 to 1901........................... 4,200.00
Amount collected of Sexton estate on Dec. 30, 1904 ................................ 12,500.00

Interest thereon at 5 per cent per annum from Dec. 30, 1904 to Nov. 24, 1931, 26 years, 10 months and 26 days............ 16,815.06

Total.................$58,945.19

Accordingly the judgment of the circuit court is reversed and judgment will be entered here in favor of Walter E. Crimp, Alfred A. Crimp, Bessie Crimp Harvey, and against the First Union Trust and Savings Bank, executor of the last will of Eugenia Crimp Bridge, deceased, to be paid in due course of administration, in the sum of $58,945.19, together with costs in this court and the circuit court.

*Reversed and judgment here for $58,945.19.*

GRIDLEY, P. J., and SCANLAN, J., concur.