PHILLIP BIEL *et al.*, Plaintiffs-Appellants, *v.* METROPOLITAN LIFE INSURANCE COMPANY *et al.*, Defendants-Appellees.

(No. 72-149;

Second District—November 26, 1973.

Pedderson, Menzimer, Conde & Stoner, of Rockford, for appellants.

Welsh, Holmstrom, Hyser, Jacobson & Worden, of Rockford, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Plaintiffs sued on October 31, 1969 and subsequently filed their amended complaint to (1) enjoin defendants from permitting their land fill to slide on to plaintiffs' adjoining land, (2) to require defendants to construct a retaining wall to prevent further spilling over, (3) to remove the land fill that has spilled over onto plaintiffs' land and for damages.

Following a bench trial the court entered judgment for defendants finding that (1) there was no continuing trespass by them, (2) plaintiffs' predecessors in title gave consent for the spillover, (3) any further spillover was the natural consequence of the original land fill, (4) the filling having occurred in 1957 and plaintiffs having acquired an interest in their adjoining land in 1960, the spillover should have been apparent to plaintiffs and having remained silent and not objected, plaintiffs were guilty of laches, and (5) defendants and their successors and assigns have a license granted by plaintiffs' predecessor in title binding on the plaintiffs by which the plaintiffs are obligated to provide lateral support to the extent now provided by the spillover on plaintiffs' property.

The primary question presented is whether under the circumstances defendants have the right to lateral support from plaintiffs' land or whether plaintiffs are entitled to the relief requested.

In 1957 defendant Metropolitan Life Insurance Company ("Metropolitan") through its subsidiary bought a tract of land having a frontage of 250 feet on the south side of East State Street in Rockford, Illinois, and a depth of 175 feet. (In view of the fact that this tract is occupied by defendant State Street Robert Hall Clothes Corporation under a lease from Metropolitan we will refer to this parcel as "Robert Hall property".) The purchase agreement with Alvin Liebling, the seller (hereinafter referred to as "Alvin"), dated June 24, 1957 included the following provision:

> "After the purchaser's taking of title hereunder, the seller agrees within thirty (30) days to fill and grade these premises to street level, installing upon the premises clean porous fill compacted in accordance with specifications for compaction test supplied by

the purchaser, and in accordance with grading plans supplied by the purchaser \* \* \*.

It is understood and agreed by and between the parties hereto that in the filling and grading of these premises, the seller shall permit the fill to overrun onto premises retained by the seller to the natural slope of said fill to avoid the necessity of constructing any retaining walls or similar structures."

On that date title to the Robert Hall property, as well as the adjoining property subsequently acquired by the plaintiffs was in Wm. J. and Kathie Watkins Osborne. On August 1, 1957 the Osbornes conveyed the Robert Hall property to Alvin and on August 13, 1957 Alvin conveyed title thereto to Metropolitan's subsidiary. Prior thereto in July of 1957 Alvin's father, Max Liebling (hereafter referred to as "Max"), who was a land developer and general contractor, entered into a contract with another contractor for filling, grading and rolling the Robert Hall property. The job was performed in July and August, 1957 at Max's direction and under his supervision and the August statement therefor in the sum of $5459 was rendered to Max and paid by him.

Plaintiffs presently are the owners of an L-shaped parcel of land which adjoins and abuts the entire length of the Robert Hall property to the west and to the south.

At the time of Alvin's contract to sell the Robert Hall property, Max had "some kind of preliminary interest" or "fee interest" in what is now plaintiffs' parcel. By deed dated August 1, 1957 and recorded March 13, 1959 the Osbornes conveyed to Max a portion of the adjoining parcel south of the Robert Hall property. The remaining tracts of this parcel were conveyed to Max by the Osbornes on August 1, 1958, and the deeds were recorded August 4, 1958. On March 4, 1959 Max conveyed the tracts constituting plaintiffs' L-shaped parcel to Rees H. Harris and Annie L. Harris.

In 1960 plaintiffs entered into a contract with the Harrises for a deed to this parcel and acquired title thereto by deeds dated December 29, 1966 and November 10, 1967.

Defendant's black top parking lot is located near the boundary line between the Robert Hall property and plaintiffs' land. The spillover of the land fill onto plaintiffs' land acts as a support for that lot. Plaintiffs' land as well as defendants, and most other land in that area, sloped down from East State Street. One of plaintiffs' witnesses who is in the concrete and excavating business testified that with plaintiffs' permission the witness used plaintiffs' property for five or six years for dumping "probably one hundred yards of dirt there," and "most of it was broken concrete."

The spillover on plaintiffs' land is covered with dense vegetation, six or more species of trees numbering thirty-five or more with an average diameter of six to eight inches; some of the trees reach a height of thirty feet and others ten to twenty feet. The grade of spillover is of no appreciable amount at the street. However, along the north-south property line separating plaintiffs' and defendant's land, and along the property lying south of the defendant's property the grade of spillover increases to a width of ten to twelve feet.

Early in 1968 plaintiffs engaged an architect to develop their parcel and preliminary drawings were made; they contemplated erecting a ramp along the boundary line next to the Robert Hall property sloping down from East State Street. Plaintiffs' witnesses testified that the estimate of cost of removing the fill and spillover and building a retaining wall to retain the land fill within the boundaries of the Robert Hall property ranged from $16,500 to $25,000.

Plaintiffs contend that the right to lateral support applies to land only in its natural state and that defendants having altered the natural contour of their parcel by fill which spilled over onto plaintiffs' land are trespassers to that extent and not entitled to such support. Counsel for both plaintiff and defendant have cited *City of Quincy v. Jones* (1872), 76 Ill. 231, in support of their respective positions. We do not believe that case is controlling under the factual situation here except as to the general principles enunciated therein.

As noted above, it was Max, plaintiffs' predecessor in title, who caused and paid for the filling and grading of the Robert Hall property, and "to avoid the necessity of constructing any retaining walls or similar structures" permitted the "over-run" of the fill to spill onto what is now plaintiffs' parcel. During the period of some three years until 1960, the ownership of plaintiffs' land was in Max and then in the Harrises. When plaintiffs purchased the land from the Harrises in 1960 they were aware of the land fill and the supporting slope on their parcel but did nothing about it for nine years until late in 1969 when they brought this suit. In the meantime, defendants further improved the Robert Hall property by adding more fill, improving the black top on their parking lot, constructing a flume near the property line to handle water drainage and prevent erosion, and erecting a fence at the edge of their parking lot next to plaintiffs' land. In addition, the retaining slope on plaintiffs' land became covered with dense vegetation with over thirty-five trees, some reaching thirty feet in height and eight inches in diameter.

■■ With the passage of twelve years, the resultant use of the Robert Hall property, and the exposure of that property and the supporting slope on plaintiffs' parcel to the elements, the Robert Hall property

(together with the supporting slope) became ground in its natural condition, and therefore the Robert Hall property became entitled to lateral support by plaintiffs' adjoining parcel. In *Bradley v. Valicenti*, 185 Pa. Super. 403, 138 A.2d 238, 240, the Pennsylvania court stated,

> "* * * Even if, after the construction of the house, certain of the excavated material was used for fill purposes, the passage of five years, the resultant use of the land and its exposure to the elements, would make it ground in its natural condition, as viewed by the adjacent landowner and entitled to lateral support by the adjacent property."

In the instant case, the facts are considerably more convincing than in the *Bradley* case. Here, we have a prior owner who not only permitted and acquiesced to the spillover but actually directed the fill to be placed on the land subsequently acquired by him. He then conveyed the property in question to another party subject to the spillover, who then in turn conveyed the property to plaintiffs. In other words, the plaintiffs are the third parties in title and the first to object to the spillover, and then some nine years after they purchased the property with full knowledge of the same.

■■ Moreover, although defendants raised the affirmative defense of laches in their answer, the plaintiffs presented no facts to indicate why they delayed their action for nine years. In *Warner v. Gosnell* (1956), 8 Ill.2d 24, 36, 132 N.E.2d 526, 532, the Illinois Supreme Court held that inasmuch as the defendant had set up laches in his answer as an affirmative defense, it was then incumbent on the plaintiff to allege a reason or excuse for her laches. (See also *Korson v. Stathopulos* (1929), 334 Ill. 193, 199, 165 N.E. 616.) Plaintiffs had knowledge of the condition of their parcel but did nothing to assert any right they may have had to relief for nine years, and gave no valid excuse for their delay. Under such circumstances their laches bars any right to relief. From the record, the trial court reasonably found that plaintiffs were guilty of laches. Our holding makes it unnecessary to consider either the trial court's holding, with which we do not agree, that a license was granted to defendants, or other arguments raised by the parties.

We therefore conclude that the trial court did not err in entering judgment for defendants. Judgment affirmed.

Affirmed.

SEIDENFELD and DIXON, JJ., concur.