**JACKSON COUNTY, MO., v. ALTON R. CO.**
No. 11365.

Circuit Court of Appeals, Eighth Circuit.
July 11, 1939.
Rehearing Denied Aug. 30, 1939.

Rufus Burrus, of Independence, Mo., and John B. Pew, of Kansas City, Mo., for appellant.

634

Charles M. Miller of Kansas City, Mo., for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and BELL, District Judge.

WOODROUGH, Circuit Judge.

Jackson County, Missouri, sued The Alton Railroad Company in two law actions which were removed on the ground of diversity of citizenship, consolidated for trial and tried together. At the close of the plaintiff's evidence the defendant railroad company "offered peremptory instructions" and after argument the court indicated his desire for time to consider the same. The jury was thereupon waived and the trial continued before the court. At the close of all the evidence the defendant repeated its offer of a peremptory instruction and the court having requested briefs and taken the cause under advisement, filed a written opinion incorporating "findings" and entered judgment for the defendant. Jackson County has taken this appeal. Although it is a single appeal, we separate the cases for discussion and consider first:

## The Blue Springs Case.

It appears that on November 12, 1931, Jackson County filed a complaint against the railroad company before the Public Service Commission of Missouri, alleging that the wooden viaduct across the railroad company's tracks at the town of Blue Springs was old, worn out and obsolete and unsuitable for the traffic that would pass over the same upon the completion of the new highway which was then under construction. The County prayed for an order authorizing the construction of a new viaduct according to the plans and specifications filed with its complaint, and for an order prorating and dividing the cost of said new structure between the county and the railroad company defendant in the proceedings. The railroad company resisted the complaint, and after hearing had been had the Commission made findings in favor of the county and ordered the viaduct to be reconstructed in practical accordance with the plans filed. It also ordered that "Jackson County, Missouri, and The Alton Railroad Company shall each bear fifty per cent of the cost of reconstructing said proposed viaduct and that the county shall maintain the structure." The railroad company appealed from the order and the Circuit Court affirmed. Further appeal was then taken by the railroad company to the Supreme Court of Missouri, and that court affirmed. State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 985, 70 S.W.2d 52–54.

While the case was pending in the Circuit Court and on August 17, 1932 a written contract was entered into between the county and the railroad company as follows:

"Contract Relating to Blue Springs Bridge.

"This contract, made and entered into this 17th day of August, 1932, by and between Jackson County, Missouri, party of the first part, and The Alton Railroad Company, a corporation, party of the second part, Witnesseth: that,

"Whereas, Jackson County, Missouri, filed with the Public Service Commission of Missouri, an application for permission to construct a bridge on the Blue Springs road, near Blue Springs, Missouri, where the same intersects the right-of-way of The Alton Railroad Company, in lieu of the bridge heretofore constructed and maintained by said Railroad, and asked for an apportionment of the cost of said bridge between the County and the Railroad, said application being numbered 7847; and

"Whereas, the Public Service Commission did, on the 11th day of June, 1932, enter an order, authorizing the construction of said bridge at the point and place as prayed by Jackson County, and assessed against The Alton Railroad Company, fifty per cent of the cost of the construction of said bridge, and the remaining fifty per cent against Jackson County, Missouri; and,

"Whereas, The Alton Railroad Company filed a petition for rehearing before the Public Service Commission, on the 20th day of June, 1932, which was overruled by said Commission on June 27, 1932, and The Alton Railroad Company has duly taken action to have the order of the Commission reviewed in court, as provided by the law of Missouri, and said proceeding is now pending in the Circuit Court of Cole County, Missouri; and,

"Whereas, Jackson County has re-constructed the highway to lead to said proposed bridge, without awaiting final determination of said application, thus making the use of the present bridge inconvenient and by reason thereof, is desirous of having said proposed bridge constructed immediately, notwithstanding a determina-

tion of the judicial review of said order has not been had and is now pending, and has solicited and urged The Alton Railroad Company to enter into this agreement, to which The Alton Railroad Company has agreed in order to accommodate Jackson County.

"Now, Therefore, in consideration of the mutual covenants and agreements hereinafter set forth, to be kept and performed by the parties hereto, it is mutually agreed and covenanted by the parties hereto, as follows:

"1. That Jackson County, upon the execution of this contract, may at its sole cost and expense, proceed to take down and remove the present bridge of the Railroad, heretofore referred to, which taking down and removal of the bridge, shall be done so as not to in any way interfere with the railroad track or passing trains thereon, and with the understanding and agreement that The Alton Railroad Company will not be liable for any damage or injury to person or property that may occur in the taking down and removal of the bridge, and will furnish to The Alton Railroad Company upon the execution of this contract, a surety bond in the sum of $25,000, acceptable to it, to indemnify and hold harmless, The Alton Railroad Company therefrom, The Alton Railroad Company to be notified when the taking down and removal of the bridge begins, so that it may have a man present if it desires, and the County is to have the material in the bridge that is taken down.

"2. After the present bridge has been taken down Jackson County shall pay for and construct the proposed bridge, without in any way interfering with the railroad track or passing trains thereon, according to the plans and specifications, as approved by the Public Service Commission and The Alton Railroad Company, at the point and place as authorized by the Public Service Commission, by contract entered into with some reliable and competent contractor, who shall be the lowest and best bidder, after the construction of the bridge has been duly advertised for bids as required by law; that The Alton Railroad Company will not be liable for any damage or injury to person or property that may occur in the course of construction of the bridge and Jackson County will furnish to The Alton Railroad Company, upon the execution of this contract, a surety bond in the sum of $25,000, acceptable to it, to indemnify and

hold harmless, The Alton Railroad Company therefrom, and also to satisfy and pay any damage, or injury or loss sustained by said Railroad Company.

"3. That the entering into of this agreement shall not prejudice the rights of either Jackson County, Missouri, or The Alton Railroad Company, and the same shall not be referred to on any hearing of the proceeding heretofore referred to, it being understood that The Alton Railroad Company enters into this agreement with the distinct understanding and agreement that it shall not in any way affect its rights under the law and its rights and those of Jackson County, shall exist and be respected the same as if this agreement had not been entered into.

"In Witness Whereof, the parties hereto have executed this contract, on the day and year first above named.

"Jackson County, Missouri,
"By Harry S. Truman.
"The Alton Railroad Company,
"By H. B. Voorhees,
"Vice President."

After the above contract was entered into the county duly advertised for bids and let the contract for the reconstruction of the viaduct to a reliable and competent contractor who was the lowest and best bidder and the job was completed in practical accord with the plans and specifications at a cost of $7,839.96, which was paid by the county. The railroad company having refused to pay "fifty per cent of the cost of reconstructing" as required in the order made by the Public Service Commission, notwithstanding the affirmance of said order by the Supreme Court of Missouri, 334 Mo. 992, 70 S.W.2d 55, the county brought this action. Its petition recited the orders made by the Commission and the affirmance thereof, the reconstruction of the viaduct by the county, the cost thereof, and the payment of the total amount by the county; demand made upon the railroad for payment of half of said cost and its refusal and failure to pay the same or any part thereof, and judgment was prayed for the amount equal to half the cost, to-wit $3,919.88. The railroad company answered by general denial.

The trial court found that the order for reconstruction of the viaduct had been duly made by the Public Service Commission and affirmed by the Supreme Court, and that following the contract between

the county and the railroad company the county had constructed the viaduct at its sole expense and° had demanded that the railroad company pay half the amount. In the findings first handed down by the court it was declared that this viaduct had not been constructed "in practical accordance with the plans and specifications approved in the order of the Public Service Commission" and that there were material departures therefrom. But on consideration of the motion for new trial, the court found that it had been in error in making the declaration and that the declaration should be restricted to the other of the consolidated cases and the findings as to this case should be considered as having been so modified. We think the effect of the order of the court correcting his findings is that the Blue Springs viaduct was found to have been constructed in practical accordance with the plans and specifications approved in the order of the Public Service Commission.

The conclusion that the county was not entitled to recover was based on the considerations (1) that the county and the railroad company had not jointly reconstructed the viaduct as contemplated in the orders of the Commission, and (2) that the orders had been suspended by reason of the appeals taken by the railroad company.

▮ We think that the terms of the contract entered into between the county and the railroad read in the light of the situation existing at the time clearly indicate that the purpose and intention of the parties was to have the viaduct built by a contractor; that such contractor was to have the qualifications specified in the contract; that he was to be selected after the competitive bidding stipulated for, and that the viaduct was to conform to the plans and specifications referred to in the orders of the Commission. It seems to us that the further intent and purpose of the parties was also clearly disclosed to permit the railroad company to continue to prosecute its litigation then pending in the courts to settle the question whether it was under obligation to pay a part of the cost of the work—and if so, what part?—and that the parties meant that the building of the viaduct while the lawsuit went on, should work no prejudice to either—that it should not even be mentioned in the court.

It is observed that under the Missouri statutes the power to authorize the building of the viaduct and to apportion the cost was vested in the Public Service Commission and the matter was justiciable in the courts by appeal. Through its appeal to the court the railroad company was assured a fair trial of all the issues it had raised against the imposition of any obligation upon it in respect to the viaduct or the cost thereof. The contract entered into was intended to and did save the right to such judicial determination to the railroad, but when the railroad had been heard in the courts, including the court of last resort, the final adjudication made the order against the railroad to pay its share of the cost of the viaduct absolute and binding upon it.

The record does not disclose that the order of the Public Service Commission was suspended at any time during the prosecution of its appeals by the railroad company. The steps necessary to effect such suspension are specified in R.S.Mo.1929, Sec. 5235, Mo.St.Ann. § 5235, p. 6664, and in the absence of such procedure had "the pendency of the writ of review did not stay or suspend the operation of the order and decision of the Commission," id.

It is contended for the railroad company that the order of the Commission did not confer any right of action upon the county to recover the amount paid by the county in discharge of the railroad's share of the cost of the viaduct, and it is true the Missouri statute does not in express terms confer the right to bring the suit for such recovery. The statute does expressly establish the right to mandamus or injunction for the purpose of having violations of the Commission's orders stopped or prevented, and it also imposes a heavy penalty on the railroad company for failure to obey the Commission's lawful orders. The company was relieved of its liability for such penalties by its contract made with the county and the construction of the viaduct in conformity with the plans and specifications approved by the Commission. But when the duty on the part of the railroad to pay the share which the Supreme Court determined to be justly apportioned to it became judicially established, the District Court was required to recognize and give full credit to the Supreme Court's judgment. That judgment finally settled that one half of the amount which the county paid for the construction was paid

for the use of the railroad company. Judgment should have been awarded in favor of the county and against the railroad company for the proportion of the cost which the Supreme Court had determined the railroad company was obligated to pay.

### The Van Horn Road Viaduct Case.

It appears as to this case that on the same day when the county filed its complaint with the Public Service Commission in the Blue Springs case above considered, it also filed another similar complaint against the same railroad in which it prayed for an order authorizing the widening and reconstruction of the over head bridge for the Van Horn Road which passes over the tracks of the railroad near Independence in Jackson County, Missouri, in accordance with plans filed with the complaint, and for an order apportioning the cost between the county and the railroad. The railroad resisted, as in the other case, and after hearing had been had, the Commission issued its order requiring the county and the railroad company "to reconstruct and widen the bridge that now carries Van Horn Road over the track of the company, in practical accordance with the plans filed herein", and providing that "Jackson County shall bear eighty per cent and the Alton Railroad Company shall bear twenty per cent of the cost". The railroad company appealed to the Circuit Court where the order was affirmed and further appeal by the railroad company to the Supreme Court resulted in affirmance by that court. State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 995, 70 S.W. 2d 57.

While the case was pending in the Circuit Court on October 17, 1932, a written contract for the construction and widening of this Van Horn Road bridge was entered into between the county and the railroad company which was in the same terms and to the same effect as the contract which had been made between the parties concerning the reconstruction of the Blue Springs viaduct above considered.

Following the contract, the county called for bids and let the contract for the construction and widening of the Van Horn Road bridge in accordance with the plans and specifications approved by the Commission, and the job was done at a cost of $47,707.06 which was paid by the county. After demand made upon the railroad company to pay the twenty per cent

share which it had been required to bear by the order made by the Commission and affirmed by the Supreme Court, 334 Mo. 995, 70 S.W.2d 57, and refusal by the railroad company, the county brought this action against the railroad for recovery of twenty per cent of $47,707.06, to-wit: $9,-541.41. The pleadings were in the same form as in the Blue Springs case and, as has been stated, the trial to the court of the two cases consolidated for trial resulted in the judgment against the county from which it has taken this appeal. The considerations which have determined our conclusions upon the Blue Springs case are applicable to this case except that as to this case the trial court made a finding that the Van Horn Road viaduct was "not constructed in practical accordance with (i. e. substantially in accordance with) the plans and specifications approved in the orders of the Public Service Commission. * * * There were material departures from the approved plans and specifications."

■ It was, of course, incumbent upon the county to prove as a prerequisite to recovery that it had constructed the bridge in practical accordance with the plans and specifications approved by the Commission, but such plans and specifications fill some hundreds of pages of the record before us, and it is apparent that the court's declaration that the job had not been done in accordance with the plans and specifications approved by the Commission was not a finding of primary evidential or circumstantial fact.

There was no disputing that the public necessity for widening the Van Horn Road Bridge had been met by the work which had been done at the cost of the county. The structure was not different in kind from the structure which the Commission had ordered to be built. The variations from the plans and specifications which occurred in the progress of the work are identified in the evidence without any substantial dispute, and the court's finding expressed merely its conclusion that the departures were such as to constitute in law "material departures from" and failure to construct "in practical accordance with" the plans and specifications.

The evidence is that at the time the Highway Commission approved the plans and specifications for the construction in question, the chief engineer of defendant railroad was present, and that the estimate of the cost of the proposed structure was

submitted to him. The amount of the estimate was $47,539, and the total cost paid by the county for the completed job was $47,707, a difference of $168 or less than one-half of one per cent. The matter most stressed for the railroad company is that the total cost was $5,739 more than the contract price of $39,381.40 at which the work was let to the contractor. But the evidence is that the reasonable and necessary cost for "Engineering, Legal and Contingencies" incurred and paid by the county, amounted to $4,337. It also appears undisputed that the railroad company required and the county obtained an accident indemnity bond to indemnify the railroad company against loss occasioned by the work, the cost of such bond being $900. It also appears that a jurisdictional labor dispute arose in the course of the work and the county permitted the work to be done by structural iron workers instead of by local iron workers as contemplated, so that an apparently unavoidable extra expense of $425 was incurred.

Each of the changes from the specifications made in the progress of the work was made under a change order of the engineer in charge of the work. There were four such orders. The first covered the cost of the indemnity bond for the railroad company. As to the second, it appeared that the railroad company had furnished data purporting to represent the structure as it was before the new construction. The data were slightly inaccurate and a small expense was incurred for extra hand excavation to discover exact conditions for footings. The next item of change amounted to $1,641.50. It was accounted for by an increase in "quantities". "The quantities in the proposal were based on plans and after the work was completed it was necessary to adjust the quantities to those actually used in construction". It appeared that the plans called for concrete to be attached to and supported by the original structure, but the material of that structure was found by borings made during the work, to be brittle and insufficient and columns had to be built up from solid foundation, which accounted for the increase of "quantities". Another change involved $104.08.

■ Except for such comparatively small items, the work was done as called for by the plans and specifications. Although no absolute rule can be laid down for all cases to mark off "practical" compliance with construction contracts from "material departures" therefrom, it seems clear that the changes necessitated by the conditions and made by the county during this construction job, did not amount to material departures which would justify denying it contribution from the railroad in compliance with the Commission's order and the Supreme Court decision.

There is no claim that the structure does not fulfill the intended purpose of the order, or that on the whole it is a different kind of structure, or inferior or defective, or that there was any bad faith or careless increase of cost. It was substantially the structure called for, and cost only one hundred and sixty eight dollars more than the estimate originally submitted to the railroad's chief engineer. Only practical accordance with the plans and specifications was required by the Commission and that was attained. The court erred in declaring the contrary conclusion.

■ A question of appellate procedure also arises. Under the old rule in this court a party to a law action who unreservedly submits his case to the trial judge for decision and judgment, leaves nothing for this court to review except the primary record. To get a broader review, he must make requests and obtain rulings, then assign his alleged errors on the rulings to which he has excepted. Thereupon a question of law is presented and only such questions of law have been reviewable here. We even thought the constitution limited us to review in that way. Hobbs-Western Company v. Employers' Liability, etc., Co., 8 Cir., 102 F.2d 32; Mutual Benefit Health & Accident Association v. Bowman, 8 Cir., 99 F.2d 856; Huglin v. H. M. Byllesby & Co., 8 Cir., 72 F.2d 341.

In this case the county did not request the trial judge to make special findings after the evidence had been concluded and the old rule is invoked to deny the county any review on its appeal because of the lack of request for special findings. But the situation presented by the record is not within the old rule. The record shows that the trial judge was called upon to decide the case on the questions of law presented and that he did so. Neither party requested the court to make any findings of fact when the evidence was all in, but the railroad company defendant offered a peremptory instruction by which it called upon the court to rule that it was

entitled to judgment as a matter of law and the court so ruled. It appears that at the end of *plaintiff's* evidence, the defendant offered a peremptory instruction and after some argument thereon the judge indicated his doubt whether the county had a case under the law and suggested that the jury be withdrawn, which was done. After all the evidence was in and the defendant's offer of peremptory instruction had been repeated, the judge asked for briefs on the questions. After considering the briefs he filed his "Memorandum Opinion, Findings of Fact, Declarations of Law, Indicated Judgments" in one entry. What were designated Findings of Fact were actually recitations of the record evidence and ultimate conclusions. There was no intention to find primary evidential or circumstantial facts. It was stated in the Memorandum, "The simple question is with such orders [by the Highway Commission] and they suspended by an appeal, may either of the parties proceed alone to reconstruct the viaduct and then, solely because of the orders sue and recover from the other party the share of expense allocated to it by the orders. That it cannot do that is obvious and that without regard to whether there is or is not substantial compliance with the approved plans and specifications. We so declare the law,".

We have, as indicated, reached conclusions upon the law differing from the conclusions of law reached by the trial court. Our conclusions compel a contrary judgment. It seems that to deny the county review because it did not make requests for special findings would, on the record we have here, add a new technicality of appellate procedure to those already found unendurable and removed by the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Those rules went into effect September 1, 1938, after this case had been tried but before any appeal had been docketed here, and must be deemed to accord with the Supreme Court's view of the constitutional limitations upon our appellate review. They provide, "Requests for findings are not necessary for purposes of review". Rule 52. And, "They [the new rules] govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies." Rule 86.

In Stoltz v. United States, 9 Cir., 99 F.2d 283, 284, the appeal presented to the Court of Appeals of the Ninth Circuit a law case tried and disposed of by the trial court long before the effective date of the new rules. The case had been submitted to the trial judge at the close of the evidence without requests for findings. The court said: "Appellee contends that there is nothing to review, because no question is raised as to admissibility of evidence, and because there was no request for special findings, and of course, no exceptions. Under the new Rules of Civil Procedure the questions presented would require answer, notwithstanding a failure to except or request special findings. Rules 46, 52 (a), 28 U.S.C.A. following section 723c. We think that there is sufficient justification for treating the failure to except and to request special findings as 'technical errors, defects, or exceptions which do not affect the substantial rights of the parties' within 28 U.S.C.A. § 391, and to decide the cause on the merits."

See dictum contra in First National Bank v. United States, 7 Cir., 102 F.2d 907, loc. cit. 912.

In the Stoltz case there had been no request to the court for peremptory determination such as was made by defendant in this case, and the trial judge had not declared, as he did in this case, that his conclusions of law determined the judgment. Much stronger reasons exist in this case than in the Stoltz case against denying review for want of request for special findings. No possible injustice to the Railroad Company can be found in the review by this court of the sufficiency of the evidence to support the judgment appealed from.

As it appears by undisputed evidence that the Van Horn Road viaduct was practically the same structure that was planned, and that the cost was all incurred in good faith to obtain such a viaduct, and no more was spent than was estimated and expected by the Railroad Company, no sound reason has been found why the order to divide the cost should not be given effect.

The judgments in both cases are reversed with directions to enter judgments for the County as prayed in its petitions.

GARDNER, Circuit Judge, concurs in result.