**ANGLO CALIFORNIA NAT. BANK OF SAN FRANCISCO v. LAZARD et al.**

No. 8975.

Circuit Court of Appeals, Ninth Circuit.

Sept. 7, 1939.

Rehearing Denied Oct. 28, 1939.

McKinstry, Haber & Coombes and J. C. McKinstry, all of San Francisco, Cal., and Cosgrove & O'Neil, T. B. Cosgrove, and John N. Cramer, all of Los Angeles, Cal., for appellants.

Hanna & Morton, Harold C. Morton, and Leon B. Brown, all of Los Angeles, Cal., for appellees.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a judgment entered January 11, 1939, in favor of appellees in the sum of $651,579.71, with costs taxed at $2,110.31. The action was originally brought as a suit in equity to recover property which had belonged to appellees or their predecessors in interest, alleged to have been fraudulently purchased from appellees and for an accounting of the oil and gas produced therefrom. The appellees at all times here involved resided in the Republic of France. At the conclusion of the appellees' case on motion of certain defendants who had purchased the property, the cause was dismissed by the court with prejudice as to these defendants upon the ground that the California statute of limitations (Calif. C.C.P. Sec. 338, subd. 4) had run as to appellees' cause of action against them. The judgment in favor of the purchasers of the property left the appellees no recourse except for damages and from then on the action proceeded as one of law for the recovery of damages for fraud in procuring the consent of appellees to such sale. The parties consented to the transfer of the case to the law side of the court and waived a trial by jury.

The appellees alleged in their complaint that appellant Herbert Fleishhacker was president of the appellant bank at the time of the alleged fraudulent transactions complained of and that the appellant bank was agent and trustee of certain parties (hereinafter referred to as the owners; see note [1]) who owned about 15,000 acres of land in California, including the 150 acres of land located in Kern County, California, in the east half of Section 24, Township 26 South, Range 20 East, M.D.B. & M. It was alleged that the appellant bank at all times mentioned herein had full power and authority to act for the owners with respect to the properties and to do all acts which the principals might do. The alleged fraudulent acts complained of had to do with sales of portions of the property (alleged to have been sold for a grossly inadequate price, about one-tenth of its value) with the acquiescence of the owners whose consent, it was alleged, was obtained by fraudulent misrepresentations to them as to its value and character as oil land. Those sales involved in all 150

---

[1] It was alleged that plaintiffs comprised all the owners of the property at the time of the fraudulent transactions complained of in 1915 and 1917 who are now living and also the successors in interest of the owners of the property who are now deceased.

acres of land. The first sale of 110 acres was made in 1915. In respect to this transaction it was alleged that the appellants for several years prior to 1915 represented to the owners of the property that appellant Herbert Fleishhacker was generally well informed on matters and activities in the oil fields in California, was watching for developments in the vicinity of their property and would advise them of matters affecting their property. It was alleged that appellant Herbert Fleishhacker was in fact well informed on activities in the oil fields in California, particularly in Kern County. It was alleged that for several years prior to 1915 oil developments had taken place in the vicinity of Section 24 so that most of the 150 acres subsequently sold had become a part of the proven oil territory of the Lost Hills Oil Field; that such development had established that that field extended across the northeast corner of Section 24 and that a large part of the 150 acres was land from which oil production could be had in large and paying quantities; that the greater part of the 150 acres was of a value in excess of $3,000 per acre; that these facts were known at that time to the appellants but unknown to the owners. It was alleged that the appellants did not advise the owners of these facts before the sale but to the contrary represented to them by cablegram that it was doubtful if the land was productive of oil, informed them they had found a buyer for 100 acres of the land at a price of $300 per acre and strongly recommended a sale at that price stating that it was a very good price for the property. It was alleged that these representations were false and known to appellants to be false and were made for the purpose and with the intent of deceiving the owners into believing them; that the owners did believe the representations and in reliance thereon consented to the sale of 100 acres; that except for such reliance they would not have consented to such sale and that thereupon the appellant bank caused 110 of the 150 acres to be conveyed to certain parties, who were original defendants in this suit as to whom the cause was dismissed, for a price of $300 per acre, $33,000 in all, whereas the property at that time had a value of more than $300,000.

In respect to the sale in 1917 of the remaining 40 acres of the 150 acres it was alleged that in order to induce the owners to consent to the sale of this property the appellants immediately after the sale of the 110 acres represented that land of the same general character as the 110 acres previously sold had been selling for from $12 to $50 per acre and that they had been offered 2,000 acres of land practically identical therewith at a price of $12 per acre. Appellees alleged that appellants represented that the price they received for the 110 acres was a top price for such undeveloped and unproven oil lands but at the time of these representations they were aware of the fact that the property was proven oil land of great value and that the representations were false and known to appellants to be so. It was further alleged that on or about September 2, 1916, appellants represented to the owners that the sale of the 110 acres had been a "chance" sale and that the property had shown to be valueless; that there were no indications of oil in the vicinity thereof and that the same property could be repurchased for $20 to $25 per acre; that these representations were false and known by appellants to be false and that at the time of these representations appellants knew that there were eight wells already drilled on the 110 acres which had been sold by the owners which were wells producing oil in large and paying quantities. It was also alleged that appellants represented to the owners that the sale of the 110 acres had only been possible because the purchaser thereof had other holdings in the immediate vicinity and desired to increase its acreage; that appellants were aware that at the time of such sale the purchasers of the property had no other holdings in the vicinity. Appellees alleged that the remaining 40 acres which immediately adjoined the 110 acres previously sold were thereafter sold by appellants on behalf of the owners at a price of $13,500 although most of the land at the time of the sale was proven oil land and of a value of at least five times the amount of the purchase price; that at the time of the sale twenty one wells had been drilled on the 110 acres sold in 1915 and were producing oil in paying quantities and many offset wells had been drilled immediately adjacent to that property; that the appellants had full knowledge of these facts but notwithstanding that knowledge represented to the owners that no production had been had therefrom; that the representations of appellants were made with the intent of defrauding the owners; that the owners acquiesced in the sale of the 40 acres solely

because of the false representations made to them and. that except for the representations made would not have acquiesced therein. It was alleged that appellees' did not know what remuneration appellants received as a result of their breach of trust and fraudulent conduct but alleged on information and belief that appellants did in fact receive rewards.

Appellees alleged that the owners and appellees had no knowledge of the fraudulent conduct of the appellants prior to 1931; that because of certain proposed transactions by appellants, who were still acting as their agents in 1930, they. became suspicious and in 1931 and 1932 investigated the matter of the sales of the 150 acres of property and as a result of these investigations commenced this action.

By the amendment to conform to proof the appellees alleged damage in the amount of $253,500 with interest of the same amount.

The findings of fact on the question of fraud were substantially in accord with the allegations of the complaint and amply support the judgment rendered.

Appellants' first point is that the District Court was without jurisdiction because of lack of the required diversity of citizenship. This contention is based on the following facts: David Cahn, holder of the record title of Section 24 in 1915 and alleged and found to be one of owners in that year, died in August 1916. Certain of the appellees claim as his successors. In the complaint, the appellees alleged the death of David Cahn, the administration of his estate and that his estate had become vested in his widow and five children. There were also allegations concerning the death of certain of his children and his widow and the vesting of their estates in certain of the appellees. In the amendment to conform to proof, the French law applicable to the vesting of these interests was pleaded and allegations were made explaining the allegations in the original bill, above referred to, concerning the due and proper administration of the estate of David Cahn and his successors in interest, as referring to the fact that under the law of the Republic of France upon the death of a person, title to his property vests in his heirs or successors specified by law or by will. The court found the facts substantially in accord with these pleadings finding the law of the Republic of France to be as alleged by the appellees and finding that the present

appellees were the persons entitled to recover damages because of the fraud of appellants. It is pointed out by the appellants that the cause of action alleged is joint and that a joint judgment was entered in favor of all appellees for the entire amount of the damages. The Public Administrator of Kern County and presumptively a citizen thereof, on April 20, 1937, was appointed administrator with the will annexed of the estate of David Cahn and on December 15, 1937, the day the case was submitted, was allowed to intervene by filing a complaint adopting the allegations of the appellees' complaint against appellants. The appellees acquiesced in the granting of the application for leave to intervene and the appellants objected thereto. The complaint in intervention was ordered stricken on motion of appellees on December 18, 1937.

It is claimed that the filing of this complaint in intervention ousted the court of jurisdiction.

■ It is claimed that the Public Administrator, hereinafter referred to as the administrator, was a necessary and indispensable party to the action. If the administrator was an indispensable party, the lack of such a party would prevent appellees from recovering for a suit cannot continue without such a party. State of Washington v. United States, 9 Cir., 87 F.2d 421, 427; Asher v. Bone, 9 Cir., 100 F.2d 315, 318. The administrator, however, was not an indispensable party. The appellees' cause of action was for fraud or deceit. The relief originally sought was for recovery of the property obtained by the fraud. When the action was transferred to the law side of the court and damages sought, there was no new or different cause of action. There was merely a change in the relief sought by appellees. Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075. Under such circumstances, it has been stated that the dominant right is to recover possession of the property; that the right to recover damages because of the deceit is alternative, secondary and incidental to this dominant right. See Zartner v. Holzhauer, 204 Wis. 18, 234 N.W. 508, 76 A.L.R. 396. Appellees thus contend that in the case at bar the dominant right to recover the land was vested in the heirs under the law of California; that in lieu thereof, they could recover the damages and that consequently the administrator was not an indispensable party. See Sec. 581, Cal.Probate Code; Cox v. Schnerr, 172 Cal. 371, 384, 156 P.

509; Page v. Garver, 146 Cal. 577, 80 P. 860. It is not necessary to rest the decision upon that ground, however, for assuming that the action for fraud was a separate chose in action, the same result is reached. As the original owners of Section 24, including David Cahn, were residents of France, the title to all choses in action would pass to those entitled thereto according to the laws of France. In re Apple's Estate, 66 Cal. 432, 6 P. 7; McDougald v. Lilienthal, 174 Cal. 698, 164 P. 387, L.R.A.1917F, 267.

The court found as a fact in accordance with the evidence that under the laws of the Republic of France title to personal property vests in the heirs of a decedent at the time of death and each of the heirs are personally and indefinitely liable for his proportion of the debts, that there is a fundamental difference between the rights of the heirs under the French law and their rights under California law.[2] Under such a title, the heirs are entitled to maintain the present action and the administrator is not an indispensable party. Berney v. Drexel, 33 Hun, N.Y., 34; Sultan of Turkey v. Tiryakian, 213 N.Y. 429, 108 N.E. 72. Appellants point out, however, that David Cahn died on August 11, 1916 and that the cause of action as to the sale of the 40 acres of land did not arise until 1917. But under the California law, David Cahn's interest in the 40 acres of land sold in 1917 became vested in his heirs upon his death in 1916 (Cal. Probate Code, Sec. 300) subject to administration. Thus they would have an action for deceit in their own right because of fraud practiced against them in the sale of their land. Moreover, although all co-owners of a joint cause of action are necessary parties in the sense that complete relief between all parties involved should be settled in a single suit (Lee v. Lehigh Valley Coal Co., 267 U.S. 542, 45 S.Ct. 385, 69 L.Ed. 782; Lawrence v. Montgomery, 37 Cal. 183, 188) they are not indispensable parties in the sense that a judgment can not be allowed to stand for the entire amount of damage in the absence of some of them. See Russ v. Tuttle, 158 Cal. 226, 110 P. 813 (joint obligee under a contract not made a party plaintiff); Chan Yo Chow v. Lim Sing, 87 Cal.App. 278, 261 P. 1039 (joint obligee under a contract not made a party plaintiff). See also the following cases under wrongful death statutes: Salmon v. Rathjens, 152 Cal. 290, 92 P. 733; Jutila v. Frye, 9 Cir., 8 F.2d 608; Chamberlain v. Larsen, 83 Utah 420, 29 P.2d 355. The common law rule laid down in Himes v. Schmehl, 3 Cir., 257 F. 69, relied upon by appellants holding that tenants in common must join in personal actions affecting the property is abrogated in California by Section 384 of the California Code of Civil Procedure.[3]

■ It is also contended by appellants that when the administrator of David Cahn was allowed to intervene, diversity of citi-

[2] Under the laws of the Republic of France, at all times herein mentioned the estates of decedents were not and the same are not administered by probate proceedings with an executor or administrator. Under the said laws all testamentary instruments of the decedent are filed with a Notary. The persons entitled to succeed to the estate of the decedent and the portion to which each is entitled are established by a written instrument executed by the Notary, known as "acte de notariete". Title to the real and personal property of the decedent vests in the heirs' or successors of a decedent at the moment of death of the decedent. The decedent's heirs and next of kin, or residuary devisees and legatees, as the case may be, take the proportion of the estate to which they are entitled, subject to a like proportion of the debts of the decedent, for which they remain personally liable. The Courts of France do not intervene in the administration of the estates of decedents, except for the purpose of directing the filing of holographic wills with the Notaries.

Plaintiffs herein, other than Horace Didot, comprise all of the living members of the Cahn and Lazard families owning said Section 24 in the years 1915, 1916 and 1917 and all of the next of kin and successors in interest to the estate of the members of said families owning the said property. The present plaintiffs are all the persons entitled to relief by reason of the fraudulent conduct of the Bank and Fleishhacker as hereinafter set forth, either by reason of being owners of said Section 24 at the time of the fraudulent sales hereinafter described or by reason of being successors in interest of such owners who have died subsequent to such sales. For convenience in these Findings, unless it is necessary to identify a particular person, the members of the Cahn and Lazard families who were the owners of said Section 24 in the years 1915 to 1917 inclusive, and who were defrauded by the acts and conduct herein set forth, are referred to as the Owners.

[3] "§ 384. Tenants in common, etc., may sever in bringing or defending actions.

zenship was destroyed and jurisdiction lost; that the court could not revest itself with jurisdiction by striking the complaint in intervention. It is clear, however, that assuming that joinder of the administrator would destroy diversity of citizenship, when the court upon the appellees' motion dismissed the cause as to the administrator, it retained jurisdiction of the remaining parties. Conolly v. Taylor, 2 Pet. 556, 7 L. Ed. 518; Drumright v. Texas Sugarland Co., 5 Cir., 16 F.2d 657; Asher v. Bone, 9 Cir., 100 F.2d 315, supra.

The second point of appellants is that the findings of fact of deceit are not supported by the evidence. In dealing with this question, we are at the outset confronted with the contention of appellees that the sufficiency of the evidence to support the findings is not within the scope of review on this appeal. It is contended that the appellants proposed findings of fact after the conclusion of the trial and that the rejection of the findings was not a ruling of the court made during the progress of the trial and consequently not reviewable. Sec. 875, Title 28 U.S.C.A.[4]

Both parties and the administrator finished presenting their evidence on December 15, 1937. The following three days were taken up by motions and argument of counsel. On the third day, Saturday, December 18, 1937, the court heard counsel for appellees in reply on a subject designated by the court and then asked the parties if they submitted their case at that time. The parties replied in the affirmative and the court after discussing and passing upon several motions of the parties, announced that it would dispose of the case that morning. The court then immediately delivered its oral opinion arriving at conclusions therein in favor of the appellees. The opinion concluded with the following statement:

"These are my conclusions. I thought it best, and believe it best to express them while they are fresh in my mind.

"The plaintiffs in the action will pre-pare the usual judgment and decree in their favor, submitting it for approval as to form, as the rules require."

On December 27, 1937, appellees filed an "Application for leave to file amendment to bill of complaint to conform to proof" annexing thereto the proposed amendment. The application was granted on the same day.

On December 28, 1937, appellees served on appellants their proposed findings of fact and conclusions of law.

On January 3, 1938, appellants filed a "Motion for order of court setting aside submission of cause and decision" annexing thereto their proposed findings of fact against fraud and a "Motion for judgment in favor of defendants." The ground of the motions was that by excusable inadvertence appellants were deprived of an opportunity to present to the court prior to submission and decision, their request for specific findings of fact and conclusions of law which was necessary in order to secure to the appellants an opportunity to preserve their right of review. An affidavit of counsel for appellants was attached to the effect that counsel for appellants had agreed to the submission under the belief that it was tentative only and that the parties would retain the opportunity to submit to the court findings, motions or written argument.

On January 7, 1938, appellants served upon appellees and filed a written "Request for findings of fact and conclusions of law" and a "Request for judgment in favor of defendants."

On January 10, 1938, appellants served upon the appellees and lodged with the clerk, which was filed as of January 11, 1938, a document entitled "Amendments, Additions and objections to proposed findings of fact and conclusions of law submitted by the plaintiffs." On this same date, appellees served upon appellants a proposed form of judgment later signed by the court. Objections to the proposed form of judgment was filed on January 11, 1938.

---

All persons holding as tenants in common, joint tenants, or coparceners, or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party."

[4] "§ 875. Review in cases tried without jury. When an issue of fact in any civil cause in a district court is tried and determined by the court without the intervention of a jury, according to section 773 of this title, the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed upon a writ of error or upon appeal; and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

On or about January 10, 1938, appellants served on appellees and filed with the court a request that an exception be noted to the order of the court granting leave to appellees to file their amendment to the bill of complaint to conform to proof. Also on January 10, 1938, the court considered and rejected appellants' "Request for findings of fact and conclusions of law" and their "Request for judgment in favor of appellants", its order reading as follows: "The foregoing request has been considered and rejected." The appellants excepted to these rulings.

On January 11, 1938, the court filed its findings of fact and conclusions of law and judgment in the case. On the same date it rejected appellants' "Amendments, additions and objections to proposed findings of fact and conclusions of law submitted by plaintiffs" and appellants' "Objections of defendants to proposed form of judgment submitted by plaintiffs." In each of these orders of January 11th, the court stated: "The foregoing objections were delivered to me after the judgment in said action had been filed in the office of the clerk. Notwithstanding the same have been duly considered and rejected." Exceptions were taken to these rulings.

On February 8, 1938, the court upon application therefore duly noticed, allowed the appellants to take exceptions to the following orders of the court: Order of Dec. 27, 1937, granting leave to plaintiffs to file "Amendment to Bill of Complaint to conform to proof"; order of January 10, 1938, rejecting appellants' "Request for judgment in favor of defendants"; order of January 11, 1938, rejecting appellants' "Amendments, additions and objections to proposed findings of fact and conclusions of law submitted by plaintiffs"; and order rejecting appellants' "Objections of defendants to proposed form of judgment submitted by plaintiffs." The court also allowed exceptions to the signing and filing of the findings of fact and conclusions of law and the signing, filing and entering of the final judgment herein. These orders and applications were made within the term of the court in which the judgment was entered as extended by Rule 11 of the court below.

The appellants rely upon the decision of the Supreme Court in Century Indemnity Co. v. Nelson, 303 U.S. 213, 58 S.Ct. 531, 82 L.Ed. 755; there special findings of fact and conclusions of law were served and lodged with the Court by the defendant in that action after the court had announced its judgment as follows: "This case having been heretofore heard and submitted and due consideration having been had, it is ordered that judgment be entered for plaintiff, with interest and costs, upon findings of facts and conclusions of law to be presented."

The Supreme Court held that the special findings of fact proposed by appellant were not too late. The court based its decision on the ground that the qualifying words of the order of the Court ("upon findings of facts and conclusions of law to be presented") considered with rule 42 of the District Court in that case (see note 2 in Century Indemnity Co. v. Nelson, supra, 303 U.S. page 215, 58 S.Ct. page 532, 82 L.Ed. 755) were appropriate to suggest merely a preliminary order, and that being so, the trial was not ended thereby. It will be noted that in the case at bar after the court had announced its conclusions on December 18, 1937, the appellees applied for and were granted application to amend their bill of complaint to conform to proof. Although there is no rule of the District Court below corresponding to rule 42 of the District Court of Northern California discussed in Century Indemnity Co. v. Nelson, supra, the court below thereafter allowed an amendment to the complaint and considered and rejected appellants' proposed special findings before the judgment was signed or entered. It is sufficient in the case at bar to say that both parties and the court below considered its first order for judgment tentative only. Consequently we will review the alleged error in rejecting the appellants' proposed findings.

That the sales were made by appellants on behalf of the owners for the prices as alleged in the complaint is not disputed. Nor is it disputed that the representations of appellants inducing the consent of the owners to the sales of 1915 and 1917 were made as alleged. The contention is that the evidence does not support the findings of fact that the representations were fraudulent.

The confidential relationship of principal and agent with general power of attorney, and of trustee and beneficiary between appellants and the owners of the property was admitted in the answer. After the 1915 sale, the confidential relationship between the appellants and the owners of the property was continued. Appellant

Herbert Fleishhacker, subsequent to the 1915 sale, assured the owners by numerous letters that he was constantly looking after their interests, would make it a point to keep the owners thoroughly posted on the general situation and was guarding their interests just as carefully as if they were his own. In 1916, the owners expressed their gratitude for the careful attention given their interests by Herbert Fleishhacker, offering a personal remuneration in addition to that paid the Bank.

Testimony of expert witnesses and charts were introduced in evidence bearing on the known status of the 150 acres as oil bearing property before the 1915 sale. Without setting out this evidence in detail, it is sufficient to state that it showed many producing wells in the vicinity of the property and showed that the anticline of the Lost Hills Oil Field passed through the 110 acres in Section 24, sold in 1915. There was substantial evidence that the property at the time of the 1915 sale was proven oil land, with a correspondingly great market value.

■■■ The trial court found that the 110 acres sold in 1915 had a market value of $260,000 at the time of the sale (about $2,363 per acre) and that the forty acres sold in 1917 had a market value at the time of the sale of $40,000. Appellants particularly complain of these findings. But there was substantial evidence presented to the trial court which supports them. For instance, there was evidence that appellants in 1913 were offered $2,000 an acre for 80 acres of the land sold. This evidence was offered and received without objection and consequently its weight in California upon the question of value was a question for the trial court. Walsh v. Majors, 4 Cal.2d 384, 49 P.2d 598; 28 U.S.C.A. § 725; Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Expert testimony of numerous witnesses was presented fixing market values on the 110 acres sold in 1915 of $4,000 per acre ($440,000), $6,000 per acre or $660,000; $500,000, $600,000; and $605,000. The witnesses based their testimony of market value upon the evidence that the land was known to be oil bearing land at the time of the 1915 sale. Testimony of an expert witness placed a valuation of $72,000 on the 40 acres sold in 1917 as of March 26, 1917, based on information available at that time. This testimony was competent to prove market value of the oil properties. Mon-

tana Railway Co. v. Warren, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681; Southern Pacific R. Co. v. S. F. Savings Union, 146 Cal. 290, 79 P. 961, 70 L.R.A. 221, 106 Am.St. Rep. 36, 2 Ann.Cas. 962; Julian Petroleum Corp. v. Courtney Petroleum Co., 9 Cir., 22 F.2d 360, 362, 363, and amply support the findings of the trial court.

■■■ There is substantial evidence supporting the finding of the trial court that the appellants knew that the greater part of the 150 acres sold was of the value of $2,500 per acre in May, 1915. Letters of Herbert Fleishhacker and a cashier of the appellant bank sent to the Owners referred to Fleishhacker's knowledge and familiarity with the oil field situation in California. Herbert Fleishhacker had made purchases of oil property situated in the next township to the south of the lands here involved. The evidence showed that he had engaged in oil enterprises for 35 years and had numerous holdings in, and connections with, oil companies and oil associations. And, as we have stated, the court believed the testimony to the effect that in 1913 he had received an offer of $2,000 an acre for 80 acres of the specific property later sold. This offer was never reported to the owners and appellant Herbert Fleishhacker denied that it was ever made. Correspondence subsequent to the 1915 sale but before the 1917 sales tended to show concealment of the facts known at the time of sale, and thereafter disclosed by the subsequent developments. As alleged in the complaint, it was represented in this correspondence that a top price had been received for the property; that practically identical property had been offered to Fleishhacker at $12 an acre; that such lands were selling for from $12 to $50 an acre; that the 1915 sale was a chance sale; that there were no indications of oil in the vicinity and that the land could be repurchased at from $20 to $25 per acre. These representations were in the main false. The explanation of Fleishhacker was that he was misinformed by an employee of appellant bank. The trial court evidently disbelieved this explanation in view of the personal knowledge of Fleishhacker of the oil situation and in view of the other evidence.

It can not be doubted, under the circumstances of the case at bar, that the representations of appellants were relied upon by the owners and induced them to consent to the sales of their properties

made on their behalf by appellants. The owners at the time of the sale were in France and their country was involved in the World War.

It is clear that these representations of appellants, inducing the sales, amounted to actionable fraud. When a confidential relation exists, misrepresentations concerning value are actionable. Eckstein v. Storck, 199 Iowa 1375, 203 N. W. 796; Shute v. Johnson, 25 Or. 59, 34 P. 965; Merritt v. Wassenich, C.C., 49 F. 785. See also, Cal.Civil Code, Sec. 1710; Walsh v. Majors, supra. Moreover, under the facts of this case, where land is situated at a great distance, and the owners are in no position to investigate, false statements concerning value which are relied upon, are clearly actionable. Herdan v. Hanson, 182 Cal. 538, 189 P. 440. See, also, Sacramento Suburban Fruit Lands Co. v. Melin, 9 Cir., 36 F.2d 907.

Appellants emphasize the fact that there was no direct evidence that appellant Fleishhacker received remuneration and thus profited by his alleged fraud; it is also claimed that there is no evidence that appellants conspired with the purchasers. But proof of financial gain to the wrongdoer is unnecessary in an action of fraud. 26 C.J. 1180; James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119, 47 S.Ct. 308, 310, 71 L.Ed. 569; Von Schrader v. Milton, 96 Cal.App. 192, 273 P. 1074. Indeed, this is conceded by appellants. Their contention is that lack of financial gain, or motive, is a factor in determining whether the trial court was justified on the evidence, in finding that Fleishhacker knowingly deceived the owners. This is true. If no reward was in fact received, it was, of course, a strong circumstance to be considered by the trial court in weighing the evidence bearing on the conduct of the appellants. That court was of the opinion that the real motive of appellants was not brought to light. It made a finding that Fleishhacker did receive rewards, inferred from the circumstances of the case. But the conclusion is not supported by the evidence, and is unnecessary to a decision. The judgment is not to recover appellants' gain but to compensate for the loss resulting to appellees because of a sale of the lands here involved. The evidence supports the finding that the representations of appellants were false, known by appellants to be so and consequently were fraudulently made.

It would serve no purpose to discuss in detail all of appellants' contentions in regard to the evidence. For the most part, the contentions, upon analysis, merely amount to the claim that the court below erred in drawing inferences from the evidence favorable to the appellees. For example, appellants argue that the $2,000 offer in 1913 for 80 acres of the land, above referred to, was not made, or that Fleishhacker treated it as not a bona fide offer. Fleishhacker denied that such offer was made. Inasmuch as the evidence was conflicting, these questions obviously were ones for the trial court. That court was clearly justified by direct evidence to that effect in finding that a bona fide offer of $2,000 for 80 acres of the land was made and rejected. It is sufficient to say that there was substantial evidence to support the findings. The weight to be given to the evidence was for the trial court and not for this court. See Ocean Accident & Guaranty Corporation v. Rubin, 9 Cir., 73 F.2d 157, 96 A.L.R. 412, and cases cited therein. (It should be stated that the case was tried below and judgment rendered before the new rules of Civil Procedure went into effect. See Rule 52(a), 28 U.S.C. A. following section 723c, as to effect of the findings of the trial court in cases at law where a jury is waived).

The appellants' third point is that the cause of action is barred by the statute of limitations and by laches. The controlling statute of limitations is Cal.Code of Civil Proc. Sec. 338, subd. 4, providing that an action is barred as follows:

"Within three years:

"* * * * * *

"4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The contention is that the trial court erred in finding that the appellees or the owners were not barred by Sec. 338, subd. 4, supra.

The long delay in the case at bar was, of course, exceptional and it was for the appellees to explain it and to show that the discovery was within three years. Prewett v. Dyer, 107 Cal. 154, 40 P. 105; Gray v. Yarbrough, 61 Cal.App. 724, 215 P. 914. The evidence showed that the owners first became suspicious as to the trustworthiness of the appellants in 1930 when

their attention was called to maps and journals showing oil developments in the neighborhood of some of their unsold oil property (not here involved) which had not been disclosed by Herbert Fleishhacker in connection with a proposed lease of this property which had been negotiated by him on behalf of the owners. The owners decided to send an oil expert from New York to California to investigate their land. Upon receiving information that Herbert Fleishhacker was a stockholder of the Indian Petroleum Co. (one of the proposed lessees of the property above referred to) a representative of the family was sent to California to investigate the 1930 leases. He arrived in this country in April, 1931. During his investigation he came upon facts which made him suspicious of the 1915 and 1917 sales. He finally concluded that the sales of 1915 and 1917 had been induced by fraud of the appellants and upon the basis of the discoveries made, appellees brought the present action. There was testimony that the owners did not investigate the value of the land sold in 1915 and 1917 because of their reliance and trust in appellants. Six of the appellees, each representing a branch of the family of the owners, testified as to their lack of knowledge prior to 1931 of the fact that their lands had been sold for less than their known value and testified as to circumstances indicating a lack of knowledge of all the owners of this fact. We think that the evidence substantially supported the finding of the trial court that none of the owners, prior to 1931 knew of the inadequacy of the price received for the property in 1915 and 1917. See Hamilton v. Pacific Electric Ry. Co., 12 Cal.2d 598, 86 P.2d 829, 831; Barney's Adm'x v. Quaker Oats Co., 85 Vt. 372, 82 A. 113; Estate of Bridges, 263 Ill.App. 499, affirmed, Crimp v. First Union Trust & Savings Bank, 352 Ill. 93, 185 N.E. 179.

 Appellants contend that the means of knowledge is the equivalent of knowledge. Appellees concede that appellees or the owners had the means of discovering the inadequacy of the selling price. But it is of no consequence that the facts disclosing the fraud could have been discovered had an investigation been undertaken sooner. Appellees or the owners were not bound to make an investigation until they had knowledge of facts of such a character as to put them upon a duty of inquiry. Consolidated R. & P. Co. v. Scarborough, 216 Cal. 698, 16 P.2d 268; Tarke v. Bingham, 123 Cal. 163, 55 P. 759. See, also, Denson v. Pressey, 13 Cal.App.2d 472, 57 P.2d 522 and cases cited therein. That appellees had no knowledge of such facts was admitted in the answer.[5] Moreover, in view of the fact that the confidential relationship between appellants and the owners of the property continued within three years of the bringing of the suit, lack of diligence was not present in failing to make an independent investigation of the 1915 and 1917 sales before 1931. Rutherford v. Rideout Bank, 11 Cal.2d 479, 80 P.2d 978, 117 A.L.R. 383; Lataillade v. Orena, 91 Cal. 565, 27 P. 924, 25 Am.St.Rep. 219; Barron Estate Co. v. Woodruff Co., 163 Cal. 561, 126 P. 351, 42 L.R.A.,N.S., 125; Duff v. Duff, 71 Cal. 513, 12 P. 570. In regard to laches, it may be added that as the action was one of law, that doctrine is not applicable. See Wehrman v. Conklin, 155 U.S. 314, 15 S.Ct. 129, 39 L.Ed. 167; Brownrigg v. De Frees, 196 Cal. 534, 238 P. 714. We conclude that the finding of the trial court that appellees' action was not barred by the statute of limitations is sustained by the evidence.

 Appellants' point four is that the judgment is erroneous in including approximately $400,000 in interest as part of the total damages. Under this point, appellants make two contentions. The first is that the discretion of the trial court was never properly invoked because it was not until the amendment to conform to proof was there any allegation before the court claiming interest; that in the amendment to conform to proof there was no prayer for interest as the allegations claim-

---

5 Defendants admit and allege on information and belief that the beneficial owners of land standing in the name of David Cahn or Andre Lazard were residents of France; that no matter or thing was brought to their attention to cause them to be or become in any manner suspicious or doubtful of the acts or integrity of said Bank or its officers at any time.

That the relation of trust and confidence between the owners of the land on the one part and the Bank and its officers on the other continued to exist throughout the years following such sales and said Bank and its said officers continued to act as agents and trustees of the owners with respect to other properties.

ing interest were only contained in the ad damnum clause. The court did not err in allowing the amendment to conform to proof. The discretion of the trial court was properly invoked for the court could grant relief embraced within the issues including a judgment for interest though not prayed for. Perry v. Magneson, 207 Cal. 617, 279 P. 650; Cassacia v. Phoenix Ins. Co., 28 Cal. 628.

 The second contention under Appellants' fourth point is that the allowance of interest was an abuse of discretion. Appellees contend that the allowance of interest was not discretionary but a matter of right. We assume, however, that the recovery of interest in the case at bar was discretionary. See Cal.Civ.Code, Sec. 3288. Compare Boss v. Silent Drama Syndicate, 82 Cal.App. 109, 255 P. 225; Mary Pickford Co. v. Bayley Bros., Cal.App., 68 P.2d 239, affirmed 12 Cal.2d 501, 86 P.2d 102, 114. The discretion was not abused. See Isaacs v. Frank Meline Co., 2 Cal.App.2d 341, 37 P.2d 1045. Compare Wilkinson v. Singh, 93 Cal.App. 337, 269 P. 705.

Under point five in their brief appellants contend that the court made numerous prejudicial errors. It is argued that the court erred in denying appellants' motion to set aside the decision in the cause, in numerous rulings on the admissibility of the evidence, in permitting appellees on their ex parte motion to file their amendment of the complaint to conform to proof and in denying appellants' motion for a new trial made on the ground that the damages were excessive.

We have already stated that the court did not err in allowing appellees to amend their complaint to conform to the proof.

 The purpose of the motion to set aside the court's oral decision was to enable appellants to move for judgment and findings in their favor in order to protect their right to a hearing on appeal on the sufficiency of the evidence to support the findings. Inasmuch as we have held that the trial was still open for the proposal of special findings by the appellants, the trial court did not abuse its discretion in denying this motion.

As to the claimed errors arising out of the court's rulings on the admissibility of evidence, we have examined appellants'

contentions and find no merit in them. We refer briefly, however, to some of these contentions.

 It is contended that the court erred in admitting evidence as to French law. The contention is that French law had not been pleaded at the time it was offered in evidence; that the bill was not amended to allege French law until the filing of the amendment to conform to proof. But the bill of particulars explained the allegation "due and proper administration" (of the estates of decedent owners) as referring to French law and stated the French law. The bill of particulars could be properly deemed an amendment to the pleading. Treadwell v. Nickel, 194 Cal. 243, 228 P. 25, 33; Universal Oil Products Co. v. Skelly Oil Co., D.C., Del., 12 F.2d 271.[6] Moreover, the error, if any, was not prejudicial. See 28 U.S.C.A. § 391; Midland Valley R. Co. v. Excelsior Coal Co., 8 Cir., 86 F.2d 177, 179; Cuneo Press v. Claybourn Corp., 7 Cir., 90 F.2d 233. As we have stated, in the amendment to conform to proof, the allegation of "due and proper administration" was explained as referring to French law.

 Appellants contend that the court erred in admitting into evidence books and records of the California Star Oil Co. relative to value of 80 acres of the land sold. This evidence was admitted by the court conditioned upon the proof of a conspiracy between appellants and the purchasers of the property. The court stated that the evidence might be stricken if it should later appear that it was finally irrelevant and immaterial. Exceptions were taken to these rulings. But no error was committed. The evidence was admissible against California Star Oil Co. and the co-defendants charged with conspiracy. If no conspiracy was proved, the evidence should not be considered against appellants. The trial court has broad discretion in regulating the order of evidence and deferring a ruling on its admissibility. Spencer v. Read, 8 Cir., 217 F. 508, 516; Vandell v. United States, 2 Cir., 6 F.2d 188, 190; People v. Ferlin, 203 Cal. 587, 265 P. 230. Objections to the competency of evidence received on condition of other proof are waived unless later renewed by a motion to strike. Curcuru v. Peninsular Electric Light Co., 6 Cir., 258 F. 785. See

6 The bill of particulars was demanded and furnished pursuant to the provisions of Equity Rule 20, 28 U.S.C.A. following section 723, while the case was still being tried on the equity side of the court.

also 48 A.L.R. 487; Estate of Wempe, 185 Cal. 557, 197 P. 949. More v. Finger, 128 Cal. 313, 60 P. 933. As no ruling was obtained on a motion to strike and no exception taken, the error if any, was not reviewable. United States v. McCoy, 193 U.S. 593, 598, 24 S.Ct. 528, 48 L.Ed. 805. Moreover, as the case was tried by the court without a jury, and as there was other evidence sufficient to sustain the findings of the court as to value, the admission of this evidence, even if improper, was not ground for reversal. Jackson Furniture Co. v. McLaughlin, 9 Cir., 85 F.2d 606, and cases therein cited.

 It is also claimed that the court erred in sustaining appellees' objection to a question asked a witness (Etienne Lang) as to whether he had asked O'Donnell (one of the original defendants as to whom the complaint was dismissed) information concerning the purchase of the 110 acres. The purpose of the question, it is claimed was to bring out the attitude of O'Donnell when first approached by the representative of the appellees. The evidence was not admissible. At most it was the equivalent of a self-serving statement.

 Appellants claim error in the exclusion of the testimony of A. C. McLaughlin, one of appellants' witnesses, as to his efforts to sell property of the Pacific Oil Co. at Coalinga after its appraisal by experts. The evidence was properly excluded.

 Appellants contend that the court below erred in reference to the taking of and the admission into evidence of the depositions of appellees David David-Weill, and Christian Lazard. The depositions were taken in California de bene esse under authority of R.S. § 863, 28 U.S.C.A. § 639, which provides that the testimony of any witness may be taken by deposition de bene esse when the witness lives at a greater distance from the place of trial than 100 miles. A plaintiff may testify on his own behalf by deposition de bene esse. Nash v. Williams, 20 Wall. 226, 22 L.Ed. 254; New Jersey R. & T. Co. v. Pollard, 22 Wall. 341, 22 L.Ed. 877. There was no error in the court's rulings.

 The ruling of the trial court denying a motion for a new trial is not subject to review, except for an abuse of discretion. There was no abuse of discretion.

Affirmed.

HANEY, Circuit Judge (concurring).

I concur in the result and in the reasoning leading thereto, except on two points.

First. The case was submitted for decision and decided on December 18, 1937. Appellants had failed to move for judgment and to request special findings in their favor until January 3, 1938. The judgment was thereafter entered on January 11, 1938. I agree with the majority that the question as to the sufficiency of the evidence is before us, but on the ground that under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requests "for findings are not necessary for purposes of review" (Rule 52(a)), and "the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court * * * a motion for judgment" (Rule 52(b)). Stoltz v. United States, 9 Cir., 99 F.2d 283, 284; Jackson County, Missouri v. Alton Railroad Company, 8 Cir., 105 F.2d 633, July 11, 1930. I think such rules are applicable because submission to us of the appeal is a further proceeding in an action pending on September 16, 1938, and therefore Rule 86 requires application of Rule 52. Compare: McCrone v. United States, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108, April 17, 1939.

Second. In deciding the question as to the sufficiency of the evidence, the majority test the validity of the findings by the rule that findings must be sustained if there is any "substantial evidence to support" them. Rule 52(a) of the Federal Rules of Civil Procedure provide: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses". I think that rule is applicable, and applying it, I think the trial court's findings are not "clearly erroneous".